# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PWM Property Management LLC, *et al.*,[1] | ) Case No. 21-11445 (MFW) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |

**DECLARATION OF MOHSIN Y. MEGHJI, IN
SUPPORT OF THE DEBTORS' MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING
POSTPETITION USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED
PARTIES; AND (III) GRANTING RELATED RELIEF**

I, Mohsin Y. Meghji, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury:

1. I am the Chief Restructuring Officer ("**CRO**") of each of the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"). I also am a Managing Partner M3 Advisory Partners, LP, which is the Debtors' proposed restructuring advisor in these chapter 11 cases.

2. I submit this declaration (this "**Declaration**") in support of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Scheduling a Final*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if available) are: PWM Property Management LLC; 245 Park Avenue Property LLC (9531); HNA 245 Park Ave JV LLC (5043); 245 Park JV LLC (2417); 245 Park Avenue Mezz C LLC (5276); 245 Park Avenue Mezz B LLC (4961); 245 Park Avenue Mezz A LLC (4673); 181 West Madison Holding LLC (2346); and 181 West Madison Property LLC (3759). The debtors' service address for purposes of these cases is 245 Park Avenue, Floor 40, New York, New York 10167.

*Hearing; and (IV) Granting Related Relief* (the "**Cash Collateral Motion**"),[2] filed concurrently herewith.

3. As Chief Restructuring Officer, I am generally familiar with the Debtors' business, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge; my discussions with members of the Debtors' external advisors; my review of relevant documents and information concerning the Debtors' operations and financial affairs; and my opinion based upon my experience and knowledge of the Debtors' industry, operations, and financial condition.

4. In making this Declaration, I have relied in part on information and materials that the Debtors, my colleagues at M3 Advisory Partners, LP, and the Debtors' other external advisors have, as applicable, gathered, prepared, verified, and provided to me, in each case under my ultimate supervision, at my direction, and for my benefit in preparing this Declaration. Unless otherwise indicated, any financial information contained in this Declaration is unaudited and subject to change, but is accurate to the best of my knowledge. Such information is presented on a consolidated basis for the Debtors, except where specifically noted. If called as a witness, I could and would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

## I. The Prepetition Secured Parties are Adequately Protected

5. The proposed use of Cash Collateral is necessary to preserve the Debtors' respective assets during these chapter 11 cases. The requested relief will permit the Debtors to

---

[2] Capitalized terms used herein but not otherwise defined will have the meaning ascribed to them in the Cash Collateral Motion.

operate in the ordinary course, preserve the value of the Prepetition Secured Parties' collateral, and fund the costs of administering these estates. The failure to obtain the requested relief would impair stakeholder value and deny the Debtors access to sufficient working capital necessary to: (a) preserve the value of the Prepetition Secured Parties' collateral; (b) make payments to the Property Managers on account of reasonable compensation and reasonable and documented out-of-pocket costs and expenses provided under the relevant management agreements; (c) satisfy operating costs; and (d) fund the administrative costs of these chapter 11 cases. Rather, the immediate ability to use Cash Collateral will allow the Debtors to continue their operations uninterrupted, which is critical to preserving the value of their estates.

6. The Prepetition Secured Parties will receive adequate protection in exchange for the use of Cash Collateral. Based on valuations conducted in February 2021, the value of 245 Park Avenue exceeds its debt by approximately $282 million (excluding the Preferred Equity Contribution),[3] and the value of 181 West Madison exceeds its debt by approximately $151 million. Based on these most recent valuations, I consider that there is an equity cushion. Additionally, as of October 29, 2021, the Park Avenue Debtors had unrestricted cash of approximately $11,956,017, and the West Madison Owner had unrestricted cash of approximately $23,935,186.

## II. Immediate Need for Access to Cash Collateral

7. The Debtors generate revenue from rents paid by Property tenants. The cash generated from this rent is used to fund the Properties' day-to-day obligations, including paying vendors, property managers, and suppliers, and to service the Debt Obligations.

---

[3] Even including the amount of the Preferred Equity Contribution in the amount of the 245 Park Avenue Debtors' prepetition indebtedness, the appraised value of 245 Park Avenue would exceed its debt by $122 million.

8. The proposed immediate use of the Cash Collateral is intended to provide working capital while the Debtors operate in chapter 11 pending the Final Hearing. In addition, the Debtors will use the Cash Collateral to preserve the value of the Prepetition Secured Parties' other collateral, including the Properties, ensuring adequate protection for the Prepetition Secured Parties' interests.

9. If the Debtors are unable to use the cash generated by the Properties, they will be unable to make critical payments to their property managers, suppliers and other vendors, which will adversely affect the operation of the Properties and their relationships with their tenants, and likely decrease the value of the lenders' collateral.

10. The Debtors will suffer immediate and irreparable harm if they are not authorized to use Cash Collateral on an emergency basis to cover ongoing expenses as set forth in the Interim Budget set forth as **Exhibit A**. Cash Collateral is the only source of cash available to the Debtors to pay their ongoing expenses arising in the ordinary course of business, and the Debtors will be unable to continue their operations unless the Court immediately authorizes interim use of Cash Collateral.

11. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 31, 2021

By: _/s/ Mohsin Y. Meghji_
Name: Mohsin Y. Meghji
Title: Chief Restructuring Officer

# Exhibit A

## Interim Budget

| | *Forecast Week:* | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | Jan '22 | Feb '22 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *($ in Thousands)*   *Week Ending:* | 11/5 | 11/12 | 11/19 | 11/26 | 12/3 | 12/10 | 12/17 | 12/24 | 12/31 | 1/28 | 2/25 | Total |
| | **Receipts** | | | | | | | | | | | | |
| [1] | Base & Other | $4,382.1 | $2,158.3 | $4,499.0 | $13.5 | $1,046.9 | $6,666.2 | $4,499.0 | – | $1,060.4 | $13,701.8 | $15,321.1 | $53,348.1 |
| [2] | Real Estate Tax Reimbursement | 205.1 | – | – | 103.0 | – | 198.8 | – | – | – | 2,788.4 | 9,880.4 | 13,175.6 |
| [3] | **Receipts** | **$4,587.2** | **$2,158.3** | **$4,499.0** | **$116.5** | **$1,046.9** | **$6,864.9** | **$4,499.0** | **–** | **$1,060.4** | **$16,490.2** | **$25,201.5** | **$66,523.7** |
| | **Disbursements** | | | | | | | | | | | | |
| [4] | Operating expenses | (830.4) | (853.2) | (777.4) | (882.3) | (129.4) | (1,020.9) | (439.7) | (1,049.1) | (256.4) | (2,994.9) | (2,818.5) | (12,051.8) |
| [5] | Real Estate Tax Escrow | (5,064.2) | – | – | – | (5,064.2) | – | – | – | – | (5,064.2) | (4,549.2) | (19,741.8) |
| [6] | Insurance Premium Escrow | (324.0) | – | – | – | (324.0) | – | – | – | – | (324.0) | (324.0) | (1,296.0) |
| [7] | CapEx / TI Escrow | (660.0) | (115.0) | (115.0) | (115.0) | (2,723.6) | (115.0) | (115.0) | (115.0) | (498.4) | (1,775.0) | (450.0) | (6,797.0) |
| [8] | Management Fee | – | – | – | – | – | – | – | – | (250.0) | – | – | (250.0) |
| [9] | **Total Operating Disbursements** | **($6,878.6)** | **($968.2)** | **($892.4)** | **($997.3)** | **($8,241.1)** | **($1,135.9)** | **($554.7)** | **($1,164.1)** | **($1,004.7)** | **($10,158.1)** | **($8,141.7)** | **($40,136.6)** |
| [10] | **Net Operating Cash Flow** | **($2,291.4)** | **$1,190.1** | **$3,606.6** | **($880.8)** | **($7,194.3)** | **$5,729.1** | **$3,944.3** | **($1,164.1)** | **$55.6** | **$6,332.1** | **$17,059.8** | **$26,387.1** |
| | **Non-Operating Cash Flow** | | | | | | | | | | | | |
| [11] | Professional Fees | – | – | – | – | – | – | (370.0) | – | (1,552.0) | (2,240.0) | (1,616.0) | (5,778.0) |
| [12] | Debt Service | – | – | – | – | (4,399.7) | – | – | – | – | (4,546.4) | (4,546.4) | (13,492.5) |
| [13] | Other Chapter 11 Exp. | (277.7) | – | – | – | – | – | – | – | – | (230.5) | – | (508.2) |
| [14] | **Total Non-Operating Cash Flow** | **($277.7)** | **–** | **–** | **–** | **($4,399.7)** | **–** | **($370.0)** | **–** | **($1,552.0)** | **($7,016.9)** | **($6,162.4)** | **($19,778.7)** |
| [15] | **Beginning Cash Balance** | $35,891.2 | $33,322.1 | $34,512.2 | $38,118.8 | $37,238.0 | $25,644.0 | $31,373.1 | $34,947.4 | $33,783.3 | $32,286.9 | $31,602.2 | $35,891.2 |
| [16] | Change In Cash | (2,569.1) | 1,190.1 | 3,606.6 | (880.8) | (11,594.0) | 5,729.1 | 3,574.3 | (1,164.1) | (1,496.4) | (684.8) | 10,897.4 | 6,608.3 |
| [17] | **Ending Cash Balance** | **$33,322.1** | **$34,512.2** | **$38,118.8** | **$37,238.0** | **$25,644.0** | **$31,373.1** | **$34,947.4** | **$33,783.3** | **$32,286.9** | **$31,602.2** | **$42,499.5** | **$42,499.5** |