**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
|  | ) Case No. 21-11445 (MFW) |
| PWM Property Management LLC, *et al.*,[1] | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) **Hearing Date:** December 2, 2021 at 2:00 p.m. |
|  | ) **Objection Deadline:** November 26, 2021 at 4:00 p.m. |
|  | ) |

**MOTION OF 245 PARK MEMBER LLC
FOR AN ORDER DISMISSING THE DEBTORS' CHAPTER 11 CASES**

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if available) are: PWM Property Management LLC; 245 Park Avenue Property LLC (9531); HNA 245 Park Ave JV LLC (5043); 245 Park JV LLC (2417); 245 Park Avenue Mezz C LLC (5276); 245 Park Avenue Mezz B LLC (4961); 245 Park Avenue Mezz A LLC (4673); 181 West Madison Holding LLC (2346); and 181 West Madison Property LLC (3759).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

JURISDICTION AND VENUE ...................................................................................3

BACKGROUND ..........................................................................................................3

    A.    Agreements Between 245 Park Member and its Affiliate, SL Green, and The Debtors.........................................................................................................3

    B.    The Debtors Do Not Claim To Be In Financial Distress. .......................................5

    C.    The Debtors Seek to Use Bankruptcy to Unfairly Advantage Themselves With Respect to SL Green's Rights in a Two-Party Dispute...................................6

    D.    The Debtors Declare Bankruptcy In Violation Of 245 Park Member's Consent Rights. .......................................................................................................7

ARGUMENT ................................................................................................................8

    A.    The Debtors Do Not Allege That They Are In Financial Distress. ......................13

    B.    Debtors Have Not Provided A Valid Bankruptcy Purpose for These Cases. ........14

    C.    These Cases Have Been Filed To Obtain A Tactical Litigation Advantage Over 245 Park Member and SL Green. ................................................................15

    D.    The Debtors' Prepetition Conduct Was Improper .................................................17

CONCLUSION............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*15375 Mem'l Corp. v. BEPCO, L.P.*,
  589 F.3d 605 (3d Cir. 2009)............................................................................11, 14

*Absalom Absalom Tr. v. Saint Gervais LLC*,
  C.A. No. 2018-0452-TMR, 2019 WL 2655787 (Del. Ch. Jun. 27, 2019)................8

*Albany Partners Ltd. v. Westbrook (In re Albany Partners Ltd.)*,
  749 F.2d 670 (11th Cir. 1984)........................................................................11, 12

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999).............................................................................................14

*Cedar Shore Resort Inc. v. Mueller*,
  235 F.3d 375 (8th Cir. 2000) ...............................................................................12

*CompoSecure, L.L.C. v. CardUX, LLC*,
  206 A.3d 807 (Del. 2018) ......................................................................................8

*Czyzewski v. Jevic Holding Corp.*,
  137 S.Ct. 973 (2017)..............................................................................................3

*In re Derma Pen, LLC*,
  No. 14-11894 (KJC), 2014 WL 7269762 (Bankr. D. Del. Dec. 19, 2014)............13

*In re FKF Madison Park Grp. Owner, LLC*, Adv. Proc. No. 10-56158, 2011 WL
  350306 (Bankr. D. Del. Jan. 31, 2011) ..................................................................9

*In re Franchise Servs. Of N. Am., Inc.*,
  891 F.3d 198 (5th Cir. 2018) .................................................................................9

*In re GVS Portfolio I B, LLC*,
  No. 21-10690 (CSS), 2021 WL 2285285 (Bankr. D. Del. June 4, 2021 ..........15, 16

*In re Ice Oasis, LLC*,
  No. 08-31522 TEC, 2008 WL 5753355 (Bankr. N.D. Cal. Nov. 7, 2008)..............9

*In re Integrated Telecom Express, Inc.*,
  384 F.3d 108 (3d Cir. 2004)...........................................................................12, 14

*In re JER/Jameson Mezz Borrower II, LLC*,
  461 B.R. 293 (Bankr. D. Del. 2011) .............................................11, 14, 15, 16, 17

ii

*In re Mid-South Business Assocs., LLC,*
    555 B.R. 565 (Bankr. N.D. Miss. 2016) ...................................................................9

*In re Midwest Props. of Shawano, LLC,*
    442 B.R. 278 (Bankr. D. Del. 2010) ......................................................................14

*In re Orchard at Hansen Park, LLC,*
    347 B.R. 822 (Bankr. N.D. Tex. 2006).....................................................................9

*Price v. Gurney,*
    324 U.S. 100 (1945)..................................................................................................8

*In re Primestone Inv. Partners L.P.,*
    272 B.R. 554 (D. Del. 2002)...................................................................................15

*Rainbow Mountain, Inc. v. Begeman,*
    C.A. No. 10221-VCMR, 2017 WL 1097143 (Del. Ch. Mar. 23, 2017).................8

*In re Rent-A-Wreck of America, Inc.,*
    580 B.R. 364 (Bankr. D.Del. 2018) ..........................................................12, 13, 15

*Rollex v. Associated Materials Inc.,*
    14 F.3d 240 (4th Cir. 1994) ...................................................................................11

*In re SGL Carbon Corp.,*
    200 F.3d 154 (3d Cir. 1999).............................................................................11, 13

245 Park Member LLC ("245 Park Member"), by and through its undersigned counsel, hereby moves for entry of an order (the "Motion"), a proposed form of which is attached hereto as Exhibit A, dismissing the above-captioned chapter 11 cases (the "Chapter 11 Cases") of PWM Property Management LLC, 245 Park Avenue Property LLC, HNA 245 Park Ave JV LLC, 245 Park JV LLC, 245 Park Avenue Mezz C LLC, 245 Park Avenue Mezz B LLC, 245 Park Avenue Mezz A LLC, 181 West Madison Holding LLC, and 181 West Madison Property LLC (collectively, the "Debtors"), pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code").  In support of the Motion, 245 Park Member respectfully states as follows:

## PRELIMINARY STATEMENT

1.    In what can only be described as a brazen plan by the Debtors to strong-arm their primary business partner and property manager, 245 Park Member affiliate SL Green Management Corp. ("SL Green"), and strip 245 Park Member of its bargained-for rights, the Debtors filed their Chapter 11 Cases even though they lacked corporate authority to do so, are not insolvent, and do not appear to be in financial distress.  Indeed, the Debtors—who are shell companies lacking employees and business operations, and exist for the sole purpose of owning two commercial office towers—freely admit that the only reason they have sought bankruptcy protection is to prevent 245 Park Member from exercising its rights with respect to the Debtors' commercial office tower located at 245 Park Avenue in New York, New York.

2.    The founding documents of Debtor 245 Park JV LLC, the indirect owner of 245 Park Avenue, unequivocally require the consent of 245 Park Member before the filing of any chapter 11 petition (both for that entity and its subsidiaries).  The Debtors never sought that consent, instead unilaterally commencing the Chapter 11 Cases through their new, impermissibly appointed "Independent Agents," who, on information and belief, are beholden to the Debtors' parent company.

3.      Moreover, the Chapter 11 Cases have many of the hallmarks of bad faith.  The Debtors are not financially distressed:  they themselves have stated that each of their two commercial properties "is worth significantly more than the funded indebtedness that it secures." *Declaration of Mohsin Y. Meghji, the Debtors' Chief Restructuring Officer, in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>") ¶ 7, 15.  The Debtors have no employees, *de minimis* unsecured creditors, and have no business operations of their own.  In fact, since the filing of the Chapter 11 Cases, the Debtors have asked SL Green for the contact information for their own banker, have requested that SL Green assume a significant role in the preparation of their schedules of assets and liabilities and statements of financial affairs, and have even asked SL Green to attend the initial debtor interview to explain 245 Park Avenue's finances to the United States Trustee.  (November 3, 2021 Email from L. Bauck to M.Gill et al Re: "245 Park Avenue – Bank Accounts,"  on email chain attached hereto as <u>Exhibit B</u>, November 9, 2021 Email from Z. Barbieri to M. Gill et al RE "245 Park: Walkthrough Call - Statement of Financial Affairs and Schedule of Assets and Liabilities," attached hereto as <u>Exhibit C</u>, November 9, 2021 Email from L. Bauck to J. Clark, et al. Re: "245 Park: Initial Debtor Interview," attached hereto as <u>Exhibit D</u>.)

4.      Moreover, the Debtors have filed the Chapter 11 Cases to unfairly advantage themselves in a two-party dispute that should be handled, if at all, within the context of ordinary litigation, not unauthorized and unjustified bankruptcy proceedings.  By their own admission, the Debtors' primary purpose in seeking bankruptcy protection is to avoid potentially triggering redemption rights applicable to preferred equity held by 245 Park Member, which, if unsatisfied, may lead to a forced sale of 245 Park Avenue.  (First Day Declaration ¶ 12.)  What the Debtors cannot allege is that any forced sale of 245 Park Avenue would jeopardize payments due and owing

to their secured creditors, who will continue to receive interest and principal payments generated by, among other things, the substantial revenue earned from the property.

5.      The Chapter 11 Cases were not filed with the requisite corporate consents, and even if they had been, they were not filed for a valid bankruptcy purpose.  For these reasons, they must be dismissed, returning the Debtors to the status quo ante.[2]

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Motion to Dismiss pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

7.      This Court has the authority to dismiss the improperly filed voluntary petitions because venue of the Chapter 11 Cases in this Court would have been proper under 28 U.S.C.§§ 1408 and 1409 if the voluntary petitions filed by the Debtors had been properly filed under Delaware law and the Bankruptcy Code.[3]

## BACKGROUND

**A.      Agreements Between 245 Park Member and its Affiliate, SL Green, and The Debtors.**

8.      SL Green serves as the property manager and leasing agent for 245 Park Avenue pursuant to that certain Property Management and Leasing Agreement, effective as of December

---

[2]     *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 984 (2017) (noting that dismissal sections of chapter 11 "seek a restoration of the prepetition financial status quo") (citing H.R. Rep. No. 95-595, p. 338 (1977)) ("[D]ismissal's 'basic purpose . . . is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case'").

[3]     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), 245 Park Member consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

1, 2018, between SL Green Management Corp. and Debtor 245 Park Avenue Property LLC (the "PMA").  (First Day Declaration ¶ 18.)   As property manager, and solely as the agent of the Debtors pursuant to the terms of the PMA, SL Green (a) selects, employs, pays, and supervises all employees and personnel at 245 Park Avenue and (b) contracts with most of the vendors providing goods and services to 245 Park Avenue.  Another property manager does the same for the Debtors' property located at 181 West Madison Street in Chicago, Illinois.  (*Id.* ¶ 19.)   As a result, the Debtors themselves "do not have any employees or many trade creditors."  (*Id.*)

9.     245 Park Member is an investor in 245 Park Avenue.  Pursuant to the Second Amended Limited Liability Company Agreement, dated as of November 19, 2018 (the "JV Governing Document," the relevant excerpts of which are attached hereto as Exhibit E), 245 Park Member made an equity investment of $141,000,000 in cash (the "Equity Investment").  (JV Governing Document at § 3.1.)  Debtor HNA 245 Park Avenue JV LLC owns the controlling 51.131% stake in 245 Park JV, LLC, and is the Managing Member of 245 Park JV LLC.  (*Id.*; First Day Declaration ¶¶ 29-30.)   Including accrued but unpaid interest, the Equity Investment is currently approximately $160,000,000.  (*Id.* at ¶ 37.)

10.     245 Park Member bargained for valuable rights in exchange for its substantial Equity Contribution.  The JV Governing Document provides that 245 Park Member's approval "shall be necessary for any action constituting a Major Decision" and that "neither the Managing Member nor any Member may cause [245 Park JV, LLC] nor any Subsidiary to take any action . . . in furtherance of any Major Decision without the approval of" 245 Park Member.  (JV Governing Document § 4.2.)  Included within the definition of Major Decision is the:

> filing of any petition, or consenting to the filing of any petition, that would subject [245 Park JV LLC] or any of its Subsidiaries to any case or proceeding under any federal or state law relating to bankruptcy, insolvency, reorganization or relief of debtors, or admitting in writing by the Company or any of its Subsidiaries of any

of their respective inabilities to pay their debts generally as they become due, or the making by the Company or any of its Subsidiaries of a general assignment for the benefit of any of their respective creditors."  (JV Governing Document at § 1.1, "<u>Major Decision</u>" at (z).)

11.    Also included within the definition of a Major Decision are (a) "changing, dismissing or engaging . . . professionals to render services for [245 Park JV, LLC] or any of the Subsidiaries" and (b) "entering into, modifying or terminating any agreement with any . . . property manager."[4]  (JV Governing Document, § 1.1, "<u>Major Decision</u>" at (aa) and (nn), and § 4.2.)

## B.    <u>The Debtors Do Not Claim To Be In Financial Distress.</u>

12.    Significantly, the Debtors, which do not have business operations, are not—and do not purport to be—in financial distress.  Indeed, the Debtors claim that although "[l]arge, dense commercial office markets like New York City have been disproportionately affected by pandemic-driven market conditions, and market researchers expect that this sector will likely be among the slowest to recover," (First Day Declaration ¶ 48), they "remain confident in the prospects of their business [which consists of owning 245 Park Avenue and 181 West Madison Street] on a going-forward basis."  (*Id.* at ¶ 15.)  The Debtors' other building, 181 West Madison Street, "has performed exceptionally well notwithstanding the impact of the COVID-19 pandemic and is currently 90.4% occupied." (*Id.*)  As for 245 Park Avenue, the Debtors point to a "$20 million modernization project" that they believe "will allow the property to command higher rents."[5]  (*Id.* at ¶ 53.)  In fact, the Debtors "project revenue growth in respect of 245 Park Avenue

---

[4]    Importantly, the Debtors never sought the consent of 245 Park Member with respect to the termination of the PMA or replacement of SL Green as property manager, nor did they seek to terminate the PMA by its terms.  Accordingly, the Court should rule on this Motion before hearing the *Debtors' Motion for Entry of an Order Authorizing the Rejection of the Property Management and Leasing Agreement Between 245 Park Avenue Property LLC and SL Green Management Corp., Effective as of the Debtors' Petition Date* [Docket No. 12].  If the Court determines that the filing of these Chapter 11 Cases was unauthorized, in bad faith, or both, then the Debtors are not entitled to enjoy the powers granted by section 365 of the Bankruptcy Code.

[5]    Notably, this modernization project is being spearheaded by SL Green because 245 Park Member mandated it in connection with its Equity Investment.

of up to $222 million by 2030." (*Id.*)  As a whole, "the Debtors' financial statements reflect consolidated assets totaling approximately $2.53 billion and consolidated liabilities totaling approximately $2.19 billion, more than $300 million more in assets" and consolidated 2020 annual revenues of approximately $220.87 million.  (*Id.* at ¶ 23.)

C.    **The Debtors Seek to Use Bankruptcy to Unfairly Advantage Themselves With Respect to SL Green's Rights in a Two-Party Dispute**

13.    The Debtors freely admit to commencing these Chapter 11 Cases to prevent 245 Park Member from exercising its rights and to unwind their property management contract with 245 Park Member's affiliate, SL Green.  (First Day Declaration ¶¶ 50-51, 54.)

14.    Although the Debtors smear SL Green in their First Day Declaration, the Debtors have never invoked the procedure in the PMA to remove SL Green for cause.  Instead, they filed an unauthorized motion to reject the PMA and are seeking approval of the rejection motion *nunc pro tunc* to the Petition Date,[6] wrongfully attempting to use these Chapter 11 Cases to free themselves of obligations they would not be able to circumvent outside of bankruptcy.

15.    Similarly, the Debtors argue that, had these Chapter 11 Cases not been filed, then as of November 1, 2021, 245 Park Avenue's mortgage lenders would have been able to exercise dominion over 245 Park Avenue's bank accounts unless: "(i) MLB renew[ed] its lease, (ii) a replacement tenant acceptable to the mortgage lenders assume[d] occupancy of 90% of MLB's premises at full contractual rent, or (iii) 245 Park Avenue remit[ted] cash of $19 million to an escrow account for the benefit of the mortgage lenders."  (First Day Declaration ¶ 11.)

16.    According to the Debtors, "[w]ithout access to excess cash flows from the monthly rents that 245 Park Avenue generates, 245 Park Avenue cannot make quarterly dividend payments

---

[6]    The *nunc pro tunc* nature of this inappropriate request is particularly absurd given how much the Debtors must rely on SL Green to operate 245 Park Avenue.  *See, e.g.*, Exhibits B-D.

to [245 Park Member], which will result in an accelerated mandatory redemption of [245 Park Member's] preferred equity as soon as December 31, 2021." The Debtors claim that this chain of events would permit 245 Park Member to force a sale of 245 Park Avenue. (First Day Declaration ¶¶ 12, 37.) This is the singular inevitable event (provided that 245 Park Avenue does not remit the $19 million to the escrow account) Debtors seek to forestall.

**D.     The Debtors Declare Bankruptcy In Violation Of 245 Park Member's Consent Rights.**

17.     Unbeknownst to SL Green or 245 Park Member, on October 29, 2021, each of the Debtors entered into the "Independent Agent Appointment Consent," pursuant to which the Debtors appointed two "Independent Agents," Alan Carr and Vik Jindal, in violation of the Debtors' organizational documents, which provide the process for appointing authorized agents. (Omnibus Consent Action Of The Independent Agents, On Behalf Of The Applicable Members Of The Companies (Docket No. 1 – attached to PMW Property Management LLC Bankruptcy Petition)[7] (the "Omnibus Consent Act") at 1.).

18.     Both the appointment of the Independent Agents and the filing of the Chapter 11 Cases are "Major Decisions" under the JV Governing Document, and the approval of both HNA 245 Park Ave JV LLC and 245 Park Member is "necessary" for Major Decisions to be effective. (JV Governing Document § 4.2.) Nonetheless, the Debtors did not receive authorization from 245 Park Member and instead chose the Independent Agents in their sole discretion. Two days after their unlawful appointment, the Independent Agents, without the knowledge or consent of 245 Park Member, authorized the Debtors to file these Chapter 11 Cases.

---

[7]     Bankruptcy petitions for the other Debtors, which also attach the Omnibus Consent Act, are filed as ECF 1 for Nos. 21-11437-MFW (245 Park Avenue Property LLC), 21-11438-MFW HNA (245 Park Ave JV LLC), 21-11439-MFW (245 Park JV LLC), 21-11440-MFW (245 Park Avenue Mezz C LLC), 21-11441-MFW (245 Park Avenue Mezz B LLC), 21-11442-MFW (245 Park Avenue Mezz A LLC), 21-11442-MFW (245 Park Avenue Mezz A LLC), and 21-11444-MFW (181 West Madison Property LLC).

## ARGUMENT

### I.    THE CHAPTER 11 CASES WERE UNAUTHORIZED.

19.    Five of the Debtors—all of which are incorporated in the state of Delaware—filed their bankruptcy petitions without the required consent of 245 Park Member.  The JV Governing Document prohibits the Managing Member of 245 Park JV LLC (which is Debtor HNA 245 Park Ave JV LLC) from permitting 245 Park JV LLC to make certain decisions, including filing a bankruptcy petition for that entity or any of its subsidiaries,[8] without permission from the Investor Member (which is 245 Park Member).  (JV Governing Document § 4.2.)  As 245 Park Member did not and does not give such permission, the bankruptcy petitions of 245 Park JV LLC and its subsidiaries should be dismissed as unauthorized.

20.    The U.S. Supreme Court has held that "[i]f the [court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition."  *Price v. Gurney*, 324 U.S. 100, 106 (1945).  Under Delaware law, actions taken without the requisite authority pursuant to a company's organizational documents are voidable.  *See CompoSecure, L.L.C. v. CardUX, LLC*, 206 A.3d 807, 819-20 (Del. 2018) (finding transaction voidable where required authorizations were not obtained under LLC Agreement); *Absalom Absalom Tr. v. Saint Gervais LLC*, C.A. No. 2018-0452-TMR, 2019 WL 2655787, at *3 (Del. Ch. Jun. 27, 2019) (finding that transfer of membership performed without required consents under LLC Agreement had no legal effect); *Rainbow Mountain, Inc. v. Begeman*, C.A. No. 10221-VCMR, 2017 WL 1097143, at *10 (Del. Ch. Mar. 23, 2017) (finding removal of board members in contravention of bylaws to be void).  Here, the commencement of Chapter 11 Cases by 245 Park JV LLC and its subsidiaries is voidable, as those Debtors did not

---

[8]    The Debtors that are subsidiaries of 245 Park JV LLC are 245 Park Avenue Property LLC, 245 Park Avenue Mezz A LLC, 245 Park Avenue Mezz B LLC, and 245 Park Avenue Mezz C LLC.

seek the consent of 245 Park Member that is clearly required by the JV Governing Document and thus did not have the authority to commence their Chapter 11 Cases.

21.    Under Delaware law and the law of other jurisdictions, "[a] party cannot subject an entity to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, Adv. Proc. No. 10-56158, 2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011) (plaintiffs entitled to temporary restraining order where member took actions in furtherance of bankruptcy without the required unanimous consent of all owners); *In re Franchise Servs. Of N. Am., Inc.,* 891 F.3d 198, 206-07 (5th Cir. 2018) ("if the petitioners lack authorization under state law, the bankruptcy court 'has no alternative but to dismiss the petition'"); *In re Mid-South Business Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) (a bankruptcy petition filed without proper authority must be dismissed independent of any finding of "cause" under § 1112(b), because if the debtor did not have sufficient corporate authority for the filing of its petition, then the court lacks subject matter jurisdiction over the case). In particular, courts have dismissed bankruptcy petitions where the required unanimous consent of all LLC members has not been obtained. *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827 (Bankr. N.D. Tex. 2006) (dismissing chapter 11 cases where the debtors did not have the consent of all members of the LLC to file the bankruptcy petition); *In re Ice Oasis, LLC*, No. 08-31522 TEC, 2008 WL 5753355, at *3 (Bankr. N.D. Cal. Nov. 7, 2008) ("There having been only fifty percent of the members in favor of filing the bankruptcy, it appears that the filing was not authorized"); *Mid-South Business Assocs., LLC*, 555 B.R. at 570 ("if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case").

22.    Although this Court held, in an unpublished oral bench decision, that a provision allowing a minority shareholder to block a bankruptcy filing was void as contrary to federal public

policy, (*In re Pace Indus.*, Hr'g. Tr. 38:9-16 May 5, 2020, attached hereto as <u>Exhibit F</u>), that case is inapplicable here, as the Court limited its decision to the distinguishable facts before the Court in that case.  (*Id.*)

23.     First, unlike in these Chapter 11 Cases, the debtors in *Pace Industries* were real businesses with employees, operations, and trade debt, and there was "no contest that the debtor need[ed] a bankruptcy," as their "plants [had] been closed and most of its employees [had] been furloughed."  (*Id.* at 38:17-25.)  In *In re 3P Hightstown, LLC*, a District of New Jersey case that analyzed *In re Pace Industries*, the court distinguished itself on the grounds that unlike in *Pace Industries*, where the debtor was a viable company forced into bankruptcy because of the pandemic, the debtor in *3P Hightstown* was not operating and there were no employees or significant creditors that stood to benefit from bankruptcy.  631 B.R. 205, 210-15 (Bankr. D.N.J. 2021).  Here, unlike in *Pace Industries* but similarly to *3P Highstown*, the Debtors have admitted that they have no employees or business operations and little trade debt.  They are no more than shell companies that exist to hold an ownership interest in two office buildings.

24.     Second, *In re Pace Industries, LLC* involved a prepackaged chapter 11 plan of reorganization, and the Court found that there was "no contest that, in the current context, the bankruptcy case will benefit most stakeholders."  (*In re Pace Indus.*, Hr'g Tr. at 39:1-2.)  Here, the Debtors can make no such showing.  The Debtors have not even commenced meaningful negotiations with 245 Park Member, let alone reached any type of consensual deal that would benefit the Debtors' stakeholders.  Moreover, and perhaps most importantly, the only purpose of the bankruptcy filing is to give the Debtors the upper hand in their two-party dispute with SL Green.  In *In re Pace Industries LLC*, the Debtors' only option was to restructure their businesses in chapter 11; here, the Debtors' existing debt and equity documents, not to mention the PMA,

10

govern their rights and remedies with respect to SL Green.  They cannot improperly use the Chapter 11 Cases—for which there is no valid bankruptcy purpose—solely to circumvent SL Green's bargained-for rights.

25.     Finally, although the Court found that the consent right at issue in *Pace Industries* violated public policy, no such public policy concern exists here because the filing was made in bad faith, as demonstrated below.

## II.     THE CHAPTER 11 CASES WERE NOT FILED IN GOOD FAITH

26.     The Debtors filed these Chapter 11 Cases in bad faith.  As the Third Circuit has held, section 1112(b) of the Bankruptcy Code "imposes a good faith requirement on Chapter 11 petitions," and "[o]nce at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in good faith."  *In re SGL Carbon Corp.*, 200 F.3d 154, 162, 162 n.10 (3d Cir. 1999) (internal quotations omitted); *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 298 (Bankr. D. Del. 2011) ("the burden is on the Debtors to establish that they filed their petitions in good faith to preserve the Debtors' going concern value or to maximize the value of the Debtors' estate, rather than as a litigation tactic").  "Whether the good faith requirement has been satisfied is a fact intensive inquiry in which the court must examine the totality of facts and circumstances and determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive."  *15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009) (internal quotations omitted).

27.     While there is no specific test or exhaustive list of factors for determining bad faith, courts often consider factors that evidence the intent to abuse the judicial process and the purposes of reorganization. *See, e.g., Rollex v. Associated Materials Inc.,* 14 F.3d 240 (4th Cir. 1994). In particular, certain courts consider factors that demonstrate an intent to "delay or frustrate the legitimate efforts of secured creditors to enforce their rights," *Albany Partners Ltd. v. Westbrook*

*(In re Albany Partners Ltd.),* 749 F.2d 670, 674 (11th Cir. 1984), such as when a debtor files for bankruptcy to prevent a shareholder lawsuit with no intent of effectuating a valid reorganization plan. *Cedar Shore Resort Inc. v. Mueller,* 235 F.3d 375 (8th Cir. 2000).

28.     A baseline good faith inquiry is the financial health of the bankruptcy petitioner because, as the Third Circuit has held, "[a]t its most basic level, the Bankruptcy Code maximizes value by alleviating the problem of financial distress," and therefore "good faith necessarily requires some degree of financial distress on the part of the debtor." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 121 (3d Cir. 2004). Beyond examining the financial health of the filer, there are "two inquiries" particularly important to a good faith analysis, which are: "(1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *Id.* at 120.

29.     Notably, "[a] debtor's desire to invoke the powers conferred by the Bankruptcy Code does not establish good faith, nor does it constitute a valid bankruptcy purpose." *In re Rent-A-Wreck of America, Inc.*, 580 B.R. 364, 374 (Bankr. D. Del. 2018). Chapter 11 cases are not a sword to be used to gain an advantage in litigation, or to sidestep a civil litigant's burden to prove its claims in court. In this case, the totality of the facts demonstrate that the Debtors did not act with a valid bankruptcy purpose, and have filed their Chapter 11 Cases only to obtain a tactical advantage against SL Green and 245 Park Member and forestall the inevitable. In doing so, they make a mockery of the bankruptcy framework, which is designed to help distressed businesses to implement global solutions for all of their stakeholders—not shell companies hoping to avoid an economic result they do not like.

A.   **The Debtors Do Not Allege That They Are In Financial Distress.**

30.     As an initial matter, the Debtors have failed to make the baseline required showing that they are in financial distress.  *See Rent-A-Wreck America, Inc.*, 580 B.R. at 375 ("The ability to use the redistributive provisions of the Bankruptcy Code assumes the existence of a valid bankruptcy, which, in turn, assumes a debtor in financial distress.") (internal quotations omitted); *SGL Carbon Corp.*, 200 F.3d at 166 (finding that "[s]tatements by SGL Carbon and its officials confirm that the company did not need to reorganize under Chapter 11" where, in part, a company vice president "acknowledged in his deposition that SGL Carbon had no defaults nor any financial distress when it filed for Chapter 11.")  Courts in the Third Circuit have "routinely dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11." *Id.* at 166.

31.     Although expressing concern at a general level that the COVID-19 pandemic has negatively affected the occupancy rates and revenue prospects of office buildings such as their properties, the Debtors note that, in contrast, their financial statements "reflect consolidated assets totaling approximately $2.53 billion and consolidated liabilities totaling approximately $2.19 billion," with annual revenues of approximately $220.87 million (First Day Declaration ¶ 23.)  *See In re Derma Pen*, *LLC*, No. 14-11894 (KJC), 2014 WL 7269762, at *8 (Bankr. D. Del. Dec. 19, 2014) (dismissing a chapter 11 petition where the debtor's schedules indicated that the debtor was solvent); *Rent-A-Wreck of America*, 580 B.R. at 382 (finding no financial distress on part of Debtors in part because "[t]hey were solvent").

32.     Here, the record, including the Debtors' own First Day Declaration, does not support the assertion that the Debtors are financially distressed.  For that reason and the others set forth below, the Debtors have failed to demonstrate that they filed their petitions in good faith.

B.      **Debtors Have Not Provided A Valid Bankruptcy Purpose for These Cases.**

33.     As noted above, to establish good faith, the Debtors must show that their Chapter 11 Cases serve a "valid bankruptcy purpose." *Integrated Telecom Express*, 384 F.3d at 126 ("Antecedent to any such distribution is an inquiry whether the petition and the plan are filed in good faith, i.e., whether they serve a valid bankruptcy purpose.")  The Third Circuit has recognized (a) preserving a going concern and (b) maximizing property available to satisfy creditors as valid bankruptcy purposes. *Id.* at 119 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)).  Neither of those purposes will be served here.

34.     The Debtors are not going concerns, but are instead shell companies with no employees and no business operations.  (First Day Declaration ¶ 6); *see 15375 Mem'l Corp.*, 589 F.3d at 619 (noting that the debtors recognized that, without offices, employees, or business, they "have no going concerns to preserve").  The Debtors appear to exist solely to hold interests in their properties.  *In re Midwest Props. of Shawano, LLC*, 442 B.R. 278, 291 (Bankr. D. Del. 2010) (finding bad faith where "there are no employees or business that the debtors are seeking to continue, no financial projections or valuations to provide evidence of a plan that would maximize value for creditors.")  Moreover, according to their petitions, the Debtors have only four unsecured creditors, and there is no indication that those creditors have exerted any pressure on the Debtors. *See JER/Jameson Mezz Borrower II*, 461 B.R. at 298 (internal quotations omitted); *see also* . In an attempt to manufacture a justification for these proceedings, the Debtors claim that the Chapter 11 Cases are "a necessary step to maximize the value of the Debtors' estates" and "maximize the value of the Debtors' enterprise for the benefit of all stakeholders."  (First Day Declaration ¶¶ 47, 55.)  But, other than themselves, the Debtors fail to identify any stakeholders who will benefit

14

from their restructuring.  Rather, it appears that the restructuring will have a neutral effect on creditors except for 245 Park Member and SL Green,[9] which stand to lose valuable rights.

35.     Courts in this District have held that a good faith petition "'must seek to create or preserve some value that would otherwise be lost – *not merely distributed to a different stakeholder* – outside of bankruptcy.'"  *Rent-A-Wreck of America,* 580 B.R. at 383 (quoting *Integrated Telecom*, 384 F.3d at 128–29) (emphasis in *Rent-A-Wreck of America, Inc.*).   The goal is to "maximize property *available to satisfy creditors*."  *Id.*   (quotations omitted) (emphasis in original).  Here, the Debtors have failed to show that any of their creditors would benefit from the reorganization.

C.     **These Cases Have Been Filed To Obtain A Tactical Litigation Advantage Over 245 Park Member and SL Green.**

36.     These Chapter 11 Cases were "filed merely to obtain a tactical litigation advantage" and therefore constitute a bad faith filing.  *In re GVS Portfolio I B, LLC*, No. 21-10690 (CSS), 2021 WL 2285285, at *9 (Bankr. D. Del. June 4, 2021) (internal quotations omitted); *see also JER/Jameson Mezz Borrower II,* 461 B.R. at 300-01*; In re Primestone Inv. Partners L.P.*, 272 B.R. 554, 558 (D. Del. 2002) (affirming finding of bad faith in case where the bankruptcy court found the debtor was "adequately protected" under state law.)

37.     In *In re GVS Portfolio I B, LLC*, the Court found that the bankruptcy petition was filed as a litigation tactic in light of the fact that it "was filed immediately before foreclosure in order to obtain the automatic stay coupled with the two-party nature of the dispute."  2021 WL 2285285, at *9.  Similarly, in *In re JER/Jameson Mezz Borrower II, LLC*, the court found that the

---

[9]     In fact, at the first day hearing, the Debtors' lead counsel foreshadowed their intention to unimpair certain debt, stating: "There may be components of the debt that will be reinstated and unimpaired.  There may be components of the debt that get paid off with the refinancing once we have the time to do that.  We may have cram-up fights at one or more places in the capital structure . . ."  *In re PWM Property Management, LLC*, Hr'g Tr. 16:8-13 Nov. 2, 2021.

bankruptcy cases were filed as a litigation tactic in order to stop a creditor from selling its collateral.  461 B.R. at 300-01.

38.     Here, according to the Debtors' own First Day Declaration, the Chapter 11 Cases were filed as an opening salvo in a dispute with 245 Park Member and SL Green over control of 245 Park Avenue.  Indeed, the Debtors candidly admit that their primary purpose in filing for bankruptcy is to strip 245 Park Member of its right to potentially force a sale of 245 Park Avenue, while simultaneously removing SL Green as property manager.  (First Day Declaration ¶¶ 50-51, 54.)  Undoubtedly, the Debtors could have resorted to litigation to achieve these objectives, but by folding them into the Chapter 11 Cases, the Debtors seek to obtain the considerable advantage provided by the automatic stay and the business judgment rule (in particular, with respect to the Rejection Motion) to gain an almost insurmountable tactical advantage against 245 Park Member and SL Green.  That is exactly the kind of tactical maneuvering that this Court should not countenance under the guise of a bankruptcy proceeding.

39.     The Chapter 11 Cases are addressing a "two-party dispute" between the Debtors, on the one hand, and SL Green, on the other hand.  Such disputes should be resolved through ordinary litigation, not bankruptcy proceedings.  *JER/Jameson Mezz Borrower II, LLC.* 461 B.R. at 299 (bad faith factor met where " [e]ven considering the other Debtors in the equation, the Court finds that this case involves only a two-party dispute between Colony and the Mezz III and IV Lenders" ).  Revenue earned from 245 Park Avenue and 181 Madison Avenue have been "historically . . . sufficient to pay all operating expenses," and, without any threat to the creditors being paid or employees of the Debtors themselves, " [t]he only entities affected by this action" will be the Debtors and SL Green.  *Id.*

### D.    <u>The Debtors' Prepetition Conduct Was Improper</u>

40.    Another factor which points to bad faith is the Debtors' "[p]repetition conduct," which was unquestionably improper.   *See JER/Jameson Mezz Borrower II*, 461 B.R. at 299 (one of the relevant factors for assessing bad faith is whether the petitioner's "[p]repetition conduct was improper").   As explained above at paragraph 18, the Debtors were obligated to obtain 245 Park Member's prior consent to the appointment of the "Independent Agents" and to the bankruptcy filing, but, in blatant violation of their obligations, they failed to even seek that consent so that they could launch a surprise bankruptcy petition for no other purpose than to thwart the Debtors' governing documents to the disadvantage of SL Green and 245 Park Member.   No value will be preserved by these proceedings; instead, the legal costs of proceeding with these Chapter 11 Cases will only make 245 Park Avenue *less* valuable for its stakeholders.

## <u>CONCLUSION</u>

41.    For all of the reasons set forth above, this Court should enter an order dismissing the Chapter 11 Cases.

Dated:  November 11, 2021

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

By: /s/ *Curtis S. Miller*
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@morrisnichols.com
cmiller@morrisnichols.com
dbutz@morrisnichols.com

**WILLKIE FARR & GALLAGHER LLP**

Rachel C. Strickland (admitted *pro hac vice*)
Debra M. Sinclair (admitted *pro hac vice*)
James C. Dugan  (*pro hac vice* pending)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212)-728-8000
Email: RStrickland@willkie.com
DSinclair@willkie.com
JDugan@willkie.com

Matthew Gurvitz (*pro hac vice* pending)
2029 Century Park East
Los Angeles, CA 90067-2905
Telephone: (310) 855-3000
Email: MGurvitz@willkie.com

*Counsel to 245 Park Member LLC*