# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>PWM Property Management LLC, *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 21-11445 (MFW)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a) AND 542 OF THE BANKRUPTCY CODE REQUIRING S.L. GREEN MANAGEMENT CORP. TO TURN OVER ESTATE PROPERTY**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") state as follows in support of this motion (this "**Motion**"):

**Preliminary Statement**

1. As described in further detail at the first-day hearing, the Debtors' commercial real estate properties are managed by third-party managers, including S.L. Green Management Corp. ("**SLG**"), which manages 245 Park Avenue in New York City. In its role as property manager for 245 Park Avenue—a 1.7-million square-foot commercial real estate tower at the heart of Park Avenue's commercial district—SLG provides all employees and most corporate functions (including maintaining 245 Park Avenue's books and records) necessary for the property's operations. Since the commencement of these cases, the Debtors' Chief Restructuring Officer and professionals have engaged with SLG and its counsel regarding an array of matters, including access to 245 Park Avenue's books and records. SLG has responded to certain information and

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: PWM Property Management LLC (2514); 245 Park Avenue Property LLC (9531); HNA 245 Park Ave JV LLC (5043); 245 Park JV LLC (2417); 245 Park Avenue Mezz C LLC (5276); 245 Park Avenue Mezz B LLC (4961); 245 Park Avenue Mezz A LLC (4673); 181 West Madison Holding LLC (2346); and 181 West Madison Property LLC (3759). The Debtors' service address for purposes of these cases is 245 Park Avenue, Floor 40, New York, New York 10167.

28804989

AMERICAS 110252161

document requests. But key pieces of information remain outstanding and SLG—which, by virtue of its affiliates' debt-like preferred equity interests in 245 Park JV LLC and holdings of 245 Park Avenue's Mezzanine C loans, in addition to its prepetition unsecured claims against 245 Park Avenue, is one of the Debtors' largest creditors—is imposing inappropriate restrictions on the Debtors' ability to access their own books and records.

2. SLG's actions have hindered—and will continue to hinder—the Debtors' ability to efficiently administer these estates, including efforts under way to: (a) transition 245 Park Avenue's operations to a new, un-conflicted property manager; (b) update cash-flow forecasts required by the cash collateral order; (c) prepare financial projections and other information necessary to develop, propose, and confirm a chapter 11 plan; and (d) comply with an array of reporting and disclosure obligations under the Bankruptcy Code, including the Debtors' schedules of assets and liabilities and statements of financial affairs, which are due November 28, 2021.

3. The Debtors ask that the Court require SLG to provide the Debtors' Chief Restructuring Officer and professionals with access to 245 Park Avenue's books and records, including requiring SLG to provide the Debtors' Chief Restructuring Officer and professionals with login credentials and other information necessary to access 245 Park Avenue's books and records through any online portal maintained by SLG. The requested relief is necessary to permit the Debtors to prosecute these cases and acquit their duties as debtors in possession.

**Jurisdiction, Venue, and Predicates for Relief**

4. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated

February 29, 2012 (Sleet, C.J.). This is a core proceeding under 28 U.S.C. § 157(b). Venue of these chapter 11 cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

5. The bases for relief are sections 105(a) and 542 of title 11 of the United States Code (the "**Bankruptcy Code**").

## Relief Requested

6. The Debtors seek entry of an order, substantially in the form attached as **Exhibit A**, pursuant to sections 105(a) and 542 of the Bankruptcy Code, ordering SLG to provide access to the Debtors' Chief Restructuring Officer and professionals to any books, records, and accounts held by SLG on behalf of any Debtor (the "**Books and Records**") and requiring SLG to provide the Debtors' Chief Restructuring Officer and professionals with login credentials and other information necessary to access the Books and Records through any non-proprietary software or online portal maintained by SLG.

## The Debtors Require Unfettered Access to the Books and Records

7. As described in the *Declaration of Mohsin Y. Meghji, the Debtors' Chief Restructuring Officer, In Support of Chapter 11 Petitions and First Day Motions and Applications* [Docket No. 9] (the "**First Day Declaration**"),[2] the Debtors' properties are managed by third-party managers, including SLG, which is the property manager for 245 Park Avenue. SLG's role as property manager for 245 Park Avenue is governed by a property management agreement (the "**PMA**") with the Property's owner, Debtor 245 Park Avenue Property LLC (the "**Park Avenue Owner**"). SLG provides all employees and most corporate functions (including maintaining the Property's books and records) necessary for 245 Park Avenue's operations. Furthermore, SLG

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

has historically interacted with 245 Park Avenue's tenants, vendors, and service providers in its role as property manager.

8. Prior to the Petition Date, the Debtors had concerns regarding SLG's performance as property manager. Among other things, SLG failed for years to identify a replacement tenant for long-term anchor tenant Major League Baseball (which announced its intentions to vacate the building in 2016). Major League Baseball's departure was slated to cause a "Tenant Trigger Event" as of November 1, 2021. Absent the commencement of these cases, a "Tenant Trigger Event" would have permitted the special servicer for 245 Park Avenue's mortgage loan to exercise cash dominion over the Property's bank accounts. Additionally, SLG's affiliates have other interests in 245 Park Avenue's capital structure, including preferred equity interests in Debtor 245 Park JV LLC and significant holdings of 245 Park Avenue's Mezzanine C loans. Finally, SLG also operates numerous buildings in Manhattan that compete with 245 Park Avenue for potential tenants. In connection with the commencement of these cases, the Debtors' independent fiduciaries determined that it was prudent for the Park Avenue Owner to seek to reject the PMA, effective as of the Petition Date. *See Debtors' Motion for Entry of an Order Authorizing the Rejection of the Property Management and Leasing Agreement Between 245 Park Avenue Property LLC and S.L. Green Management Corp., Effective As of the Debtors' Petition Date* [Docket No. 12] (the "**Rejection Motion**").

9. Following the Petition Date, the Debtors' Chief Restructuring Officer and professionals have sought to engage with SLG and reach consensus on any matters necessary to preserve the value of 245 Park Avenue for its stakeholders (including SLG), irrespective of the ultimate disposition of the Rejection Motion.

10. In particular, the Debtors' Chief Restructuring Officer and professionals have sought to engage with SLG and its counsel to ensure that the Debtors and their professionals have unfettered access to all books and records maintained by SLG for the Park Avenue Owner. The PMA makes clear that these books and records are the Park Avenue Owner's property:

> ***Property Manager shall maintain on an accrual basis, at the principal office and place of business of Property Manager in Manhattan, a comprehensive, complete and accurate system of office records, books and accounts,*** including without limitation all correspondence, leases, lease amendments and modifications, invoices and descriptions of all repairs, alterations and improvements made by or caused to be made by Property Manager and receipts and disbursements pertaining to the Property, which system shall be satisfactory to [the Park Avenue Owner] in its sole and absolute discretion and ***which records, books and accounts shall be available for examination and copying by [the Park Avenue Owner] and its agents, accountants and attorneys without advance notice but during regular business hours***. Property Manager shall preserve all such records, books and accounts for a period of seven (7) years, and at the end of such period, or upon any earlier termination of this Agreement, shall deliver or make available to [the Park Avenue Owner] shall direct, and at [the Park Avenue Owner]'s expense, all such records, books and accounts. ***All such records, books and accounts shall, at all times and for all purposes, be the property of [the Park Avenue Owner]***.

PMA §10.1 (emphasis added).

11. On November 10, 2021, Debtors' counsel asked SLG to provide the Debtors with access to the information necessary to complete the Debtors' statements of financial affairs and schedules, which are currently due on November 28, 2021 (the "**SOFAs and Schedules**"). *See* **Exhibit B** (email exchange between Debtors' counsel and SLG counsel dated November 10, 2021). SLG declined to do so, apparently due to its misplaced belief that the Debtors were seeking to require SLG to prepare the SOFAs and Schedules. *Id*. The Debtors' counsel made clear to SLG that the Debtors would prepare their own SOFAs and Schedules and that the Debtors simply needed SLG to provide access to the underlying records. *Id.*

12. On November 12, 2021, the Debtors' counsel wrote to SLG's counsel to again reiterate that the Debtors were not requesting that SLG complete the Debtors' bankruptcy

disclosures and to request (again) that SLG provide the Debtors' professionals with access to the Books and Records, which remain property of the estate under the PMA and applicable provisions of the Bankruptcy Code. *See* **Exhibit C** ("**Debtors' Nov. 12 Letter**").

13. Later that same day, SLG's counsel responded to counsel for the Debtors, falsely stating that the Debtors had not requested such access to the Books and Records before that date. *See* **Exhibit D** ("**SLG's Nov. 12 Letter**"). While acknowledging that the Debtors had the right to access the requested information, SLG's counsel went on to indicate that any access would have to be arranged through counsel and could only occur at SLG's offices.

14. On November 13, 2021, the Debtors' counsel responded to SLG's Nov. 12 Letter and reiterated that the Books and Records are property of the Park Avenue Owner's estate under section 541 of the Bankruptcy Code. *See* **Exhibit E** ("**Debtors' Nov. 13 Letter**"). The Debtors' counsel further requested that SLG provide the Debtors' professionals with any necessary login credentials and other information necessary to access the Books and Records. SLG did not respond. This motion followed.

**Basis for Relief**

**I.   The Books and Records Are Estate Property Under Section 541 and, Therefore, Turnover of the Books and Records Is Required Under Section 542(a)**

15. Section 541(a)(1) of the Bankruptcy Code provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1).

16. Section 542(a) of the Bankruptcy Code requires that all property of a debtor's estate be delivered to the debtor. 11 U.S.C. § 542(a) (providing that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property.")

A party seeking turnover has the burden of showing "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of [S]ection 363; and (3) the property has more than inconsequential value to the debtor's estate." *Welded Constr., L.P. v. The Williams Cos. (In re Welded Constr., L.P.)*, 609 B.R. 101, 125 (Bankr. D. Del. 2019) (quoting *Zazzali v. Minert (In re DBSI)*, 468 B.R. 663, 669 (Bankr. D. Del. 2011)). An "action for turnover under § 542(a) requires that the information requested be property of the estate." *In re Am. Metrocomm Corp.*, 274 B.R. 641, 652 (Bankr. D. Del. 2002).

17. Each of these requirements is met here. ***First***, the PMA provides that "records, books and accounts shall, at all times and for all purposes, be the property of [Park Avenue Owner]." PMA § 10.1. The Books and Records, therefore, are property of Park Avenue Owner's estate (as SLG concedes). *See* SLG's Nov. 12 Letter; *see also In re Blinder, Robinson & Co., Inc.*, 140 B.R. 790, 794 (D. Colo. 1992) ("Property of the estate includes books and records produced during a corporation's existence"); *See In re Zayat Stables, LLC*, No. 20-20524 (VFP), 2021 Bankr. LEXIS 2333, at *4 (Bankr. D.N.J. Aug. 24, 2021) (all the debtors' electronically held information was property of the estate). ***Second***, the Debtors intend to use the Books and Records in accordance with section 363 of the Bankruptcy Code. In fact, the Debtors *must* have access to the Books and Records to acquit their duties as debtors in possession. ***Finally***, the Books and Records have significant value to the Debtors and their estates. Among other things, the Debtors require access to the Books and Records to engage a new, un-conflicted property manager for 245 Park Avenue, comply with reporting obligations under the Bankruptcy Code, and eventually develop and propose a plan of reorganization. Nor would the request impose any material burden on SLG. Upon information and belief, the Debtors understand that the Books and Records are largely maintained in electronic form through Yardi, a real estate property management software

product that permits users to access information remotely through an online portal.  Therefore, the Debtors request that the Court grant the requested relief under section 542(a) of the Bankruptcy Code.[3]

## II. The Court Should Compel SLG to Provide Access to the Books and Records Pursuant to Section 542(e)

18.     Section 542(e) of the Bankruptcy Code separately provides that "[s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee."  *See* 11 U.S.C. § 542(e).  To secure access to information under section 542(e), a debtor in possession need only make an initial showing that the recorded information "relates to a debtor's property or financial affairs."  *See In re Crescent Resources, LLC*, 457 B.R. 506, 514-16 (Bankr. S.D. Tex. 2011); *cf. Am. Metrocomm Corp.*, 274 B.R. at 652 (an action under 542(e) only requires the information related to the bankruptcy case).  Courts interpret the "relating to" requirement broadly when determining whether to order turnover of recorded information under § 542(e).  *See In re The Heritage Organization, L.L.C.*, 350 B.R. 733, 740 (Bankr. N.D. Tex. 2006); *see also Zayat Stables, LLC*, 2021 Bankr. LEXIS 2333, at *4 (concluding the information to be turned over included files of individuals that were related to the debtor).

---

[3]     The Debtors submit that section 542(a) of the Bankruptcy Code supersedes the PMA and that SLG must provide access to the Books and Records irrespective of any purported restrictions in the PMA.  Even if the PMA were applicable to this matter—which, by virtue of the commencement of these cases, it is not—the restrictions SLG has proposed at certain times in recent days have no basis in the PMA.  For example, the PMA does not require the Debtors to request access through SLG's counsel to access the Books and Records.  Nor does the PMA require the Debtors' professionals to physically inspect the Books and Records at SLG's Manhattan office.

19.    The Books and Records relate to the Debtors' property and financial affairs. The Books and Records contain, among other things, accounting information, records of assets and liabilities, information regarding the tenants and operations, copies of leases, accounts receivable and accounts payable, and much more information regarding 245 Park Avenue that the Debtors must access to fulfill their obligations under the Bankruptcy Code. Accordingly, section 542(e) of the Bankruptcy Code provides an independent basis for the Court to require SLG to provide the Debtors and their professionals with access to the Books and Records.[4]

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

20.    To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under Bankruptcy Rule 6004(a) are met and (y) the 14-day stay under Bankruptcy Rule 6004(h) is waived. Such waiver is warranted here because the relief requested herein is essential to prevent potentially irreparable harm to the Debtors' business, value, and ability to reorganize.

### Notice

21.    Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Park Avenue Mortgage Servicers; (iii) Mezzanine Servicers; (iv) West Madison Mortgage Servicers; (v) the Mezzanine Lenders; (vi) the SLG Member; (vii) the Property Managers; (viii) holders of the largest unsecured claims against the Debtors (on a consolidated basis); and (ix) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

---

[4]  The records requested are all property of the Debtors. Therefore, the privilege exception under section 542(e) of the Bankruptcy Code is therefore inapplicable in this case.

**No Prior Request**

22.No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

**Conclusion**

WHEREFORE, the Debtors respectfully request that the Court order SLG to provide access to the Debtors' Chief Restructuring Officer and professionals to the Books and Records and require SLG to provide the Debtors' Chief Restructuring Officer and professionals with login credentials and other information necessary to access the Books and Records through any non-proprietary software or online portal maintained by SLG, and grant such other and further relief in favor of the Debtors as the Court deems just or proper.

[*Remainder of page intentionally left blank.*]

Dated: November 15, 2021

Respectfully submitted,

/s/ *Edmon L. Morton*
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
Allison S. Mielke (No. 5934)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
emorton@ycst.com
kenos@ycst.com
amielke@ycst.com

Thomas E Lauria (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
WHITE & CASE LLP
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
(305) 371-2700
tlauria@whitecase.com
fhe@whitecase.com

Bojan Guzina (admitted *pro hac vice*)
Jason N. Zakia (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
WHITE & CASE LLP
111 South Wacker Drive
Suite 5100
Chicago, Illinois 60606
(312) 881-5400
bojan.guzina@whitecase.com
jzakia@whitecase.com
gregory.pesce@whitecase.com

*Proposed Counsel to Debtors and Debtors-in-Possession*