**<u>EXHIBIT A</u>**

**Proposed Final Order
for 245 Park Avenue**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PWM Property Management LLC, *et al.*[1], | ) Case No. 21-11445 (MFW) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 10** |
| | ) |

### FINAL ORDER (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL WITH RESPECT TO 245 PARK AVENUE PROPERTY; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTY; AND (III) GRANTING RELATED RELIEF

Upon the motion (the **"Motion"**)[2] of the above-captioned debtors and debtors in possession (collectively, the **"Debtors"**) for entry of a final order (the **"Final Order"**) pursuant to Sections 105(a), 361, 362, 363, 506, 507, of title 11 of the United States Code (the **"Bankruptcy Code"**), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the **"Local Bankruptcy Rules"**) (i) authorizing Debtor 245 Park Avenue Property, LLC (the **"Park Avenue Owner"**) to continue to use Cash Collateral (defined below); (ii) authorizing the Park Avenue Owner to grant adequate protection to the Prepetition Secured Party (defined below); and (iii) granting related relief, as more fully set forth in the Motion [Docket No. 10]; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are PWM Property Management LLC (2514); 245 Park Avenue Property LLC (9531); HNA 245 Park Ave JV LLC (5043); 245 Park JV LLC (2417); 245 Park Avenue Mezz C LLC (5276); 245 Park Avenue Mezz B LLC (4961); 245 Park Avenue Mezz A LLC (4673); 181 West Madison Holding LLC (2346); and 181 West Madison Property LLC (3759). The debtors' service address for purposes of these cases is 245 Park Avenue, Floor 40, New York, New York 10167.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Bankruptcy Rules, and it appearing that no other or further notice need be provided; and the Court having granted (i) the *Interim Order (I) Authorizing Postpetition Use of Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 57] (the "**First Interim Order**") on November 3, 2021 and (ii) the *Second Interim Order (I) Authorizing Postpetition Use of Cash Collateral With Respect to 245 Park Avenue Property; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 196] (the "**Second Interim Order**") on December 3, 2021; and a final hearing to consider the relief requested in the Motion having been held on December 13, 2021 (the "**Final Hearing**"); and upon consideration of the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer, in Support of First Day Pleadings* [Docket No. 9] and the *Declaration of Mohsin Y. Meghji in Support of the Debtors' Motion for Entry of Interim and Final Orders: (i) Authorizing Postpetition Use of Cash Collateral; (ii) Granting Adequate Protection to Certain Prepetition Secured Parties; and (iii) Granting Related Relief* [Docket No. 11] and the record of the Final Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Park Avenue Owner and the Estate (defined below), as contemplated by Bankruptcy Rule 4001(b)(2), and is in the best interests of the Park Avenue Owner, the Estate, its creditors, its stakeholders, and all other parties in interest,

and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**[3]**:**

A.    <u>Petition Date</u>. On October 31, 2021 (the **"Petition Date"**), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court (the Chapter 11 cases commenced thereby by each of the Debtors, collectively, the **"Cases"**).

B.    <u>245 Park Avenue Owner and Property</u>. One of the Debtors is the Park Avenue Owner (the Case in which the 245 Park Avenue Owner is the debtor, Case No. 21-11437, the **"Park Avenue Owner Case"**). The Park Avenue Owner owns the land located at 245 Park Avenue, New York City, New York, and the commercial real estate building located thereon (together, **"245 Park Avenue"**).

C.    <u>245 Park Avenue Loan and Mortgage</u>. Subject to Paragraph 13 (Effect of Stipulations on Third Parties) below, (i) 245 Park Avenue, the leases and rents thereof and therefrom, and various associated personal property are encumbered by a recorded, first priority Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 5, 2017 (the **"Mortgage"**); (ii) the Mortgage secures a loan in the original principal amount of $1.2 billion made that date to the Park Avenue Owner (the **"Mortgage Loan"**); (iii) the original note evidencing the Mortgage Loan has been split into multiple notes (collectively, the **"Notes"**), and various of the Notes have been securitized; (iv) certain of the Notes are now held by Wilmington Trust, National Association, as Trustee for

---

[3]    In accordance with Bankruptcy Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

the holders of 245 Park Avenue Trust 2017-245P, Commercial Mortgage Pass-Through Certificates, Series 2017-245P (in that capacity, the **"Prepetition Secured Party"**); (v) the Mortgage Loan is guaranteed by Debtor 181 West Madison Holding LLC (the **"Park Avenue Guarantor"**; and the Case in which the Park Avenue Guarantor is the debtor, the **"Park Avenue Guarantor Case"**); and (vi) the Prepetition Secured Party (A) is the assignee of record of the Mortgage; (B) holds the Mortgage on behalf of itself and holders of the other Notes evidencing the Mortgage Loan; and (C) acts for itself and those other holders by and through Situs Holdings, LLC, its Special Servicer (in that capacity, the **"Special Servicer"**[4]), with respect to the Mortgage Loan and the Loan Documents (defined below).

D.    Debtor in Possession. The Park Avenue Owner is continuing to manage and operate its businesses and property as a debtor and debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. No request for the appointment of a trustee or examiner has been made in the Park Avenue Owner Case, and no committees have been appointed or designated therein.

E.    Jurisdiction and Venue. The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 (Sleet, C.J.).   Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  This is a core proceeding under 28 U.S.C. § 157(b). Venue of the Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4]    All references in this Final Order to the Special Servicer mean it acting on behalf of the Prepetition Secured Party, and all references herein to consents, approvals, or other acts of the Prepetition Secured Party mean the Prepetition Secured Party acting by and through the Special Servicer.

F.     <u>Cash Collateral and Collateral</u>. For purposes of this order (the "**Final Order**"), (i) the term **"Cash Collateral"** means, without limitation, all of the "cash collateral" of the 245 Park Avenue Owner within the meaning of Bankruptcy Code Section 363, in which the Prepetition Secured Party has valid, perfected security interests, liens, or mortgages, regardless of whether such security interests, liens, or mortgages existed as of the Petition Date or arise thereafter; and (ii) the term **"Prepetition Collateral"** means 245 Park Avenue and all other property, real or personal, in which the Prepetition Secured Party held a perfected security interest or lien under the Mortgage or the other Loan Documents or applicable nonbankruptcy law as of the Petition Date.

G.     <u>Necessity of Relief Requested</u>. Good cause has been shown for the entry of this Final Order. The Park Avenue Owner has a need to use Cash Collateral, among other things, to fund the orderly continuation of its business, maintain the confidence of its tenants, customers, and vendors, pay its operating expenses, and preserve its going-concern value, consistent with the Budget (defined below). In the absence of the availability of such liquidity in accordance with the terms hereof, the continued operation of the Park Avenue Owner's business would not be possible, and serious and irreparable harm to the Park Avenue Owner, estate in the Park Avenue Owner Case (that estate, the **"Estate"**), and its creditors would occur. The terms for the Park Avenue Owner's use Cash Collateral pursuant to this Final Order are fair and reasonable, reflect the Park Avenue Owner's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration. The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (d). The use of Cash Collateral in accordance with this Final Order is in the best interest of the Park Avenue Owner, the Estate, the Park Avenue Owner's creditors, and other parties in interest in the Park Avenue Owner Case.

H.    <u>Use of Cash Collateral</u>. Immediately upon entry of this Final Order, the Park Avenue Owner may use Cash Collateral as and to the extent set forth in this Final Order.

I.    <u>Adequate Protection of Prepetition Secured Party</u>. In connection with the use of Cash Collateral and the Prepetition Collateral, the Prepetition Secured Party is entitled to adequate protection of its interests in the Cash Collateral and the Prepetition Collateral, solely to the extent of any diminution in value due to the Park Avenue Owner's use, sale, or lease of Cash Collateral or the Prepetition Collateral during the pendency of the Park Avenue Owner Case, pursuant to Bankruptcy Code Sections 361, 363(c)(2), and 363(e) to the extent set forth in this Final Order. As adequate protection to the extent of any diminution in value due to the Park Avenue Owner's use, sale, or lease of Cash Collateral or the Prepetition Collateral during the pendency of the Park Avenue Owner Case, the Prepetition Secured Party will receive the adequate protection from the Park Avenue Owner to the extent provided by this Final Order, including that described in Paragraphs 10 (Prepetition Secured Party's Adequate Protection) and 11 (Prepetition Secured Party's Additional Adequate Protection), and the other provisions hereof governing the use of Cash Collateral by the Park Avenue Owner, in each case, solely to the extent of an diminution in value due to the Park Avenue Owner's use, sale, or lease of Cash Collateral or the Prepetition Collateral during the pendency of the Park Avenue Owner Case.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AND ADJUDGED that:**

1.    <u>Motion Granted</u>. The Motion is GRANTED on a final basis, and the use of Cash Collateral is authorized in accordance with the terms and conditions set forth in this Final Order.

2.    <u>Objections to Entry of Final Order Overruled</u>. All objections, limited or otherwise, to, or reservations of rights or other statements with respect to, the entry of this Final Order, to the extent not withdrawn, waived, or resolved, are hereby DENIED and OVERRULED on the merits for the reasons set forth on the record at the Final Hearing.

3.    <u>Effectiveness</u>. This Final Order shall take effect and be fully enforceable immediately upon entry hereof. At that time, this Final Order shall supersede the Second Interim Order.

4.    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final Order, including the Carve Out (defined below), the variance and carry-over authorizations set out in Paragraph 5 (Permitted Variance and Carry-Over) below, and the limitations set out in Paragraph 8 (Limitations on Use of Cash Collateral) below, the Park Avenue Owner is authorized to use Cash Collateral substantially in accordance with the budget, a copy of which is annexed hereto as **Annex A**, or any Replacement Budget (defined below) (the budget annexed hereto as **Annex A** and any Replacement Budget, during the period the same is in effect, the **"Budget"**) during the period commencing upon entry of this Final Order and continuing through and including the earlier of (i) the end of the period covered by the Budget; and (ii) the occurrence of the Termination Date (defined below) (that period, the **"Budget Period"**), to pay, in the ordinary course of the Park Avenue Owner's business and in connection with the Park Avenue Owner's Case and the other Cases—

a.    The ordinary, reasonable, and actual costs and expenses of operating 245 Park Avenue;

b. The ordinary, reasonable, and actual costs and expenses of administering the Park Avenue Owner Case and the other Cases to the extent of the Park Avenue Owner Shared Administrative Expenses Share (defined below); and

c. The Mortgage Loan Amounts (defined below).

5. <u>Permitted Variance and Carry-Over</u>.

a. The Park Avenue Owner is authorized to use Cash Collateral substantially in accordance with the Budget in any weekly period set forth in the Budget in an amount that would not cause the Park Avenue Owner to use Cash Collateral in an aggregate amount that is greater than 120% of the total expenditures provided in the Budget for that weekly period (a **"Permitted Variance"**) without the prior written consent of the Prepetition Secured Party (electronic mail being sufficient); <u>provided</u>, <u>however</u>, that—

(i) No payments (A) on account of fees, expenses, or costs of, or disbursements to, any professional engaged by the Park Avenue Owner or the Prepetition Secured Party; (B) pursuant to the *Interim Order: (I) Authorizing the Payment of Lien Claims, 503(B)(9) Claims, Third-Party Claims, and Tenant Obligations; (II) Confirming Administrative Expense Priority of Outstanding Orders; and (III) Granting Related Relief* [Docket No. 131] or any Final Court Order (defined below) successor thereto; (C) pursuant to the *Interim Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility Providers; (II) Establishing Procedures for Resolving Objections by Utility Providers; and (III) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services* [Docket No. 55] or any Final Court Order successor thereto; (D) of Mortgage Loan Amount (defined below) or any other adequate protection payments made to or for the benefit of the Prepetition Secured Party; and (E) to the Office of the United States Trustee (the **"U.S. Trustee"**) shall be limited by the Permitted Variance;

(ii)    None of the amounts set out in the Budget with respect to the payments set out in Paragraph 5.a.(i) above may be included in calculating the amount of any Permitted Variance or determining whether any Permitted Variance has been reached or exceeded by any use of Cash Collateral; and

(iii)    For the avoidance of doubt, the Park Avenue Owner shall be permitted to use Cash Collateral to make the payments set out in Paragraph 5.a.(i) above notwithstanding that those payments would otherwise cause the Permitted Variance to be exceeded.

b.    If the aggregate amount of Cash Collateral actually used by the Park Avenue Owner in any weekly period of a Budget is less than the aggregate amount of Cash Collateral available for use during that period (excluding the effect of any Permitted Variance), the Park Avenue Owner may carry over any such unused amounts to future weekly periods and successive Budgets, and may make disbursements in respect of such unused amounts in addition to any available Permitted Variance; provided, however, that none of those carry-over amounts may be included in calculating the amount of any Permitted Variance or determining whether any Permitted Variance has been reached or exceeded by any use of Cash Collateral.

6.    Replacement Budgets, and Additional Expenditures.

a.    The Park Avenue Owner shall deliver to the Prepetition Secured Party, through the Special Servicer, and the Prepetition Secured Party's counsel, at the email address set forth for the Special Servicer and that counsel, respectively, in the Notice List (defined below), in each case no later than 11:59 p.m. (prevailing Eastern Time), (i) a proposed 13-week budget (each, a **"Proposed Replacement Budget"**) in respect of the Park Avenue Owner on (A) Friday, December 17, 2021; and (B) each fourth Friday thereafter; and (ii) a comparison for the prior

rolling 4-week period of actual results of and expenditures for all items contained in the applicable Budget to the amounts originally contained in the applicable Budget on (A) the first Friday following the entry of this Final Order; and (B) on each subsequent Friday thereafter.

        b.      If the Prepetition Secured Party has not, within ten Business Days (defined below) after the delivery of a Proposed Replacement Budget, any revision thereof, or any revision of a Budget then in effect for the remainder of the Budget Period then covered thereby, including any additional period to be covered thereby, objected thereto by notice in writing to the Park Avenue Owner, through its counsel and financial advisor, M3 Advisory Partners, LP (**"M3"**), at the email addresses set forth for that counsel and M3, respectively, in the Notice List (such a Proposed Replacement Budget, revision thereof, or revision of a Budget then in effect not so objected to, a **"Replacement Budget"**), on the filing in the Cases of that Replacement Budget, that Replacement Budget shall become effective and shall supersede the then-in-effect Budget in all respects. For the avoidance of doubt, the then-in-effect Budget shall remain in effect until such time as the Replacement Budget has been filed in the Cases in accordance with this Paragraph 6.b.

        c.      If the Prepetition Secured Party has objected as provided in Paragraph 6.b above to a Proposed Replacement Budget, any revision thereof, or any revision of a Budget then in effect for the remainder of the Budget Period then covered thereby, including any additional period to be covered thereby, as a Replacement Budget and the Park Avenue Owner and the Prepetition Secured Party are unable to thereafter to agree thereon, then (i) the then-in-effect Budget shall remain in effect until the end of the Budget Period covered thereby, unless otherwise ordered by the Court after notice and a hearing; and (ii) either the Park Avenue Owner or the Prepetition Secured Party may schedule a hearing on a motion, on an expedited basis, in the Court on not fewer than two Business Days' notice to all parties in interest and subject to the Court's

availability, to resolve any disputes regarding that Proposed Replacement Budget; provided, however, that (A) no written responses shall be required to such a motion and any objections thereto may be made orally at that hearing; (B) the Park Avenue Owner and the Prepetition Secured Party each shall be deemed to have waived any right to assert that (1) it is inappropriate for the Court to consider approval of that motion on an expedited basis; (2) written responses are required to be made thereto; or (3) it is inappropriate for the Park Avenue Owner or the Prepetition Secured Party to raise any objections thereto orally at the hearing thereon; and (C) the Park Avenue Owner and the Prepetition Secured Party each reserves their respective rights under applicable law with respect to any such motion (the provisions of this proviso, the **"Expedited Hearing Provisions"**).

       d.      If the Park Avenue Owner wishes to make an expenditure or expenditures of Cash Collateral that is in excess of any Permitted Variance and not otherwise expressly provided for in the then-effective Budget but that would otherwise be consistent with this Final Order (at any time, collectively, a **"Proposed Expenditure"**), the Park Avenue Owner shall notify the Prepetition Secured Party, through the Special Servicer, and the Prepetition Secured Party's counsel, as soon as reasonably practicable, in writing of the amount and nature of the Proposed Expenditure at the email addresses set forth for the Special Servicer and that counsel, respectively, in the Notice List and provide to the Special Servicer and that counsel, in the same manner, such supporting documentation as may be reasonably necessary for the Prepetition Secured Party to evaluate the necessity and propriety of that Proposed Expenditure (each such notice, an **"Additional Authorization Request"**).

       e.      The Prepetition Secured Party shall have five Business Days from the Special Servicer's and the Prepetition Secured Party's counsel's receipt of an Additional Authorization Request to approve or object to the Proposed Expenditure requested therein, in the

Prepetition Secured Party's discretion, and the Prepetition Secured Party shall advise the Park Avenue Owner, through its counsel and M3, in writing at the email addresses set forth for that counsel and M3, respectively, in the Notice List, of its decision on or before five Business Days have elapsed from the date of the Prepetition Secured Party's receipt of that Additional Authorization Request. If the Prepetition Secured Party fails to deliver to the Park Avenue Owner, within that five Business Day period, a written objection to that Additional Authorization Request, the Proposed Expenditure identified in that Additional Authorization Request shall be deemed to have been approved by the Prepetition Secured Party, and the Park Avenue Owner shall be permitted to use Cash Collateral to make the Proposed Expenditure, subject to the terms and conditions of this Final Order. Alternatively, if the Prepetition Secured Party timely delivers a written objection to that Additional Authorization Notice, the Prepetition Secured Party shall specifically identify the basis or bases for that objection and, to the extent the Prepetition Secured Party is able to do so, in its discretion, propose such other amounts or conditions that would render that Proposed Expenditure acceptable to the Prepetition Secured Party. The Park Avenue Owner may not use Cash Collateral to pay for any Proposed Expenditure to which the Prepetition Secured Party has objected, unless otherwise authorized by the Court as provided in the next sentence, but the Park Avenue Owner shall be permitted to use Cash Collateral to pay that portion, if any, of any Proposed Expenditure to which the Prepetition Secured Party has not objected. After making an Additional Authorization Request that is not approved by the Prepetition Secured Party pursuant to this Paragraph 6.e, the Park Avenue Owner may file a motion with the Court on notice for hearing on a regular or expedited basis to request that the Court permit the Park Avenue Owner to use Cash Collateral for any Proposed Expenditure to the extent that that use (i) has not been so approved in accordance with this Paragraph 6.e; and (ii) would otherwise be consistent with this

Final Order; provided, however, that, if that hearing is on an expedited basis, (i) it may not be on fewer than two Business Days' notice to all parties in interest and subject to the Court's availability; and (ii) the Expedited Hearing Provisions will apply thereto. The Prepetition Secured Party reserves all rights it has under applicable law to oppose any such motion.

f.      Each permitted or ordered Proposed Expenditure will be deemed to be part of the then-effective Budget and governed by the provisions of this Final Order applicable to the use of Cash Collateral pursuant thereto; provided, however, that that Proposed Expenditure will be (i) in addition to the Permitted Variance then in effect; and (ii) not included in calculating the amount of any Permitted Variance or determining whether any Permitted Variance has been reached or exceeded by any use of Cash Collateral.

g.      For the avoidance of any doubt, the consent or approval of no party in interest other than the Prepetition Secured Party is required to authorize a Proposed Expenditure pursuant to this Final Order.

7.      Carve Out.

a.      Nothing in this Final Order to the contrary withstanding, the rights and claims of the Prepetition Secured Party shall be subject and subordinate in all respects to the payment of the Carve Out. As used in this Final Order, **"Carve Out"** means the sum of the following:

(i)      All fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate (without regard to the notice set forth in Paragraph 7.a(iii) below) (such fees and interest, collectively, with respect to any Case, **"Statutory Case Fees"**);

– 13 –

(ii)    All reasonable fees and expenses, up to a maximum amount of $25,000, under Bankruptcy Code Section 726(b) (without regard to the notice set forth in Paragraph 7.a(iii) below) incurred by a trustee appointed or elected in the Park Avenue Owner Case pursuant to Bankruptcy Code Sections 701, 702, 703, 706, or 1104 (a **"Trustee"**);

(iii)    To the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (**"Allowed Professional Fees"**) incurred by persons or firms retained or to be retained by (A) the Park Avenue Owner pursuant to Bankruptcy Code Sections 327, 328, or 363 (collectively, the **"Debtor Professionals"**); or (B) an official committee of unsecured creditors appointed pursuant to Bankruptcy Code Section 1102 (a **"Committee"**) in (x) the Park Avenue Owner Case; or (y) that Case and the Cases of any other Debtors, if any (including expenses of the members of a Committee; provided, however, that that Committee shall provide reporting of those expenses on the reasonable request of the Prepetition Secured Party or the Park Avenue Owner) pursuant to Bankruptcy Code sections 328 or 1103 (collectively, the **"Committee Professionals"**; and the Debtor Professionals and the Committee Professionals, collectively, the **"Professional Persons"**), in each case, at any time before or on the first Business Day after delivery by the Prepetition Secured Party of a Carve Out Trigger Notice (defined below); and

(iv)    To the extent allowed at any time, whether by interim order, procedural order, or otherwise, Allowed Professional Fees of Professional Persons in an aggregate amount of $2,000,000 (the amounts set forth in this Paragraph 7.a(iv), the **"Post-Carve Out Trigger Notice Cap"**), incurred after the first Business Day after delivery by the Prepetition Secured Party of the Carve Out Trigger Notice.

b. For purposes of this Paragraph 7 (Carve Out), **"Carve Out Trigger Notice"** means a written notice from the Prepetition Secured Party to the Park Avenue Owner, its counsel, the U.S. Trustee, and counsel to any Committee, at the email addresses set forth for each of them, respectively, in the Notice List, delivered following the occurrence of the Termination Date stating that the Post-Carve Out Trigger Notice Cap has been invoked by the Prepetition Secured Party.

c. On the day on which a Carve Out Trigger Notice is given by the Prepetition Secured Party in accordance with Paragraph 7.b above, if any (that day, the **"Termination Declaration Date"**), the Park Avenue Owner shall utilize all cash on hand as of the Termination Declaration Date and any available cash thereafter held by Park Avenue Owner—

(i) First, to fund a reserve in an amount equal to the then unpaid amounts of Allowed Professional Fees, which the Park Avenue Owner shall deposit to and hold in a segregated account in trust to pay those then unpaid Allowed Professional Fees (that reserve, the **"Pre-Carve Out Trigger Notice Reserve"**) prior to any and all other claims; and

(ii) Then, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the **"Post-Carve Out Trigger Notice Reserve"**; and the Pre-Carve Out Trigger Notice Reserve and Post-Carve Out Trigger Notice Reserve, collectively, the **"Carve Out Reserves"**) prior to any and all other claims other than those to be paid out of the Pre-Carve Out Trigger Notice Reserve.

d. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used (i) first, to pay the amounts set forth in Paragraphs 7.a(i) through (iii) above (collectively, the **"Pre-Carve Out Amounts"**), but not, for the avoidance of doubt, the amounts set forth in Paragraph 7.a(iv) above, until paid in full; and (ii) then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay to the Prepetition Secured Party for application in accordance with

the Loan Documents unless the Obligations (defined below) have been indefeasibly paid in full in cash, in which case any such excess shall be paid to the Park Avenue Owner's other creditors in accordance with respective their rights and priorities as of the Petition Date.

   e. All funds in the Post-Carve Out Trigger Notice Reserve shall be used (i) first, to pay the amounts set forth in Paragraph 7.a(iv) above (the **"Post-Carve Out Amounts"**); and (ii) then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay to the Prepetition Secured Party for application in accordance with the Loan Documents unless the Obligations have been indefeasibly paid in full in cash, in which case any such excess shall be paid to the Park Avenue Owner's other creditors in accordance with their respective rights and priorities as of the Petition Date.

   f. Nothing in the Loan Documents or this Final Order to the contrary withstanding—

   (i) If either of the Carve Out Reserves is not funded in full in the amounts set forth in this Paragraph 7 (Carve Out), then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this Paragraph 7 (Carve Out), prior to making any payments to the Prepetition Secured Party or any of the Park Avenue Owner's other creditors, as applicable;

   (ii) Following delivery of a Carve Out Trigger Notice, the Prepetition Secured Party may not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Park Avenue Owner until the Carve Out Reserves have been fully funded, but the Adequate Protection Liens shall extend to the residual interest of the

Prepetition Secured Party in the Carve Out Reserves and any excess there shall be paid to the Prepetition Secured Party for application in accordance with the Loan Documents;

(iii)    (A) Disbursements by the Park Avenue Owner from the Carve Out Reserves shall not constitute Debt (as defined in the Loan Agreement (defined below)) or increase or reduce the Obligations; (B) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out; and (C) in no way shall the Budget, the Carve Out, the Post-Carve Out Trigger Notice Cap, the Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Park Avenue Owner; and

(iv)    Other than the Prior Senior Liens (defined herein), the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, the 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the Obligations.

g.    Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

h.    The Prepetition Secured Party shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Party, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Park Avenue Owner has sufficient funds to pay such compensation or reimbursement.

i.      Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

8.      <u>Limitations on Use of Cash Collateral</u>. Notwithstanding the authority granted to the Park Avenue Owner pursuant to Paragraph 4 (Authorization to Use Cash Collateral) above, the Park Avenue Owner may not use Cash Collateral—

a.      For payment of any dividends, distributions, withdrawals, or other similar equity or capital payments to or for the benefit of any other Debtor or any shareholder, member, partner, affiliate, or insider of the Park Avenue Owner (such persons, collectively, the **"Debtor Parties"**); <u>provided</u>, <u>however</u>, that (i) for the avoidance of doubt (A) payments, including reimbursements, under any contract or agreement not in the nature of dividends, distributions, withdrawals, or other similar equity or capital payments are not prohibited by this Paragraph 8.a, but are, nonetheless, subject to any other applicable provisions of this Final Order, including with respect to amounts that may be expended pursuant to the Budget; (B) S.L. Green Management Corp. (**"SLG Manager"**) shall not constitute a Debtor Party with respect to the *Property Management and Leasing Agreement* dated as of November 19, 2018 (and effective as of December 1, 2018), made by Park Avenue Owner and SLG Manager; and (B) HNA North America LLC (**"HNA-NA"**) shall not constitute a Debtor Party with respect to the payment to HNA-NA, as the assignee of Debtor HNA 245 Park Ave JV LLC (**"HNA-245"**), pursuant to the *Second Amended and Restated Limited Liability Company Agreement of 245 Park JV LLC* dated as of November 19, 2018, made by HNA-245 and 245 Park Member LLC, of the Asset Management Fee (as defined in that agreement) otherwise payable by Debtor 245 Park JV LLC to HNA-245; (ii) any direct or indirect payment out of Cash Collateral of any Asset Management Fee to HNA-

NA as that assignee is, nonetheless subject to any other applicable provisions of this Final Order, including with respect to amounts that may be expended pursuant to the Budget, and is not a Shared Administrative Expense; and (iii) the Prepetition Secured Party reserves all rights with respect to any direct or indirect payment out of Cash Collateral of any Asset Management Fee to HNA-NA as that assignee, including to seek to recoup or cause the recoupment of any such payment.

        b.      Except as expressly provided in this Final Order or in the Budget then in effect, for payment of any property or asset management fee or charge or other similar payment to any Debtor Party; or

        c.      Except as provided in the proviso below of this Paragraph 8.c, for payment of any fees, including statutory or filing fees, or expenses of any other Debtors or for the benefit of any attorneys, accountants, appraisers, real estate brokers, or other Professional Persons retained by any other Debtor or any other Debtor Party, or jointly by one or more other Debtors or other Debtor Parties and the Park Avenue Owner; provided, however, that (i) the Park Avenue Owner may use Cash Collateral in accordance with the other provisions of this Final Order to pay not more than 88.9% of (A) Statutory Case Fees with respect to the Cases; (B) filing fees required to be paid to the State of Delaware with respect to any Debtor; and (C) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, the fees and expenses that are incurred by the Debtor Professionals that are retained or to be retained jointly by the Park Avenue Owner and one or more of the other Debtors and the Committee Professionals that are to be compensated by the Park Avenue Owner and one or more of the other Debtors (all those statutory, filing, and other fees and expenses, collectively, the **"Shared Administrative Expenses"**; and the share of the Shared Administrative Expenses to be paid by the Park Avenue Owner, the **"Park Avenue Owner Shared Administrative Expenses Share"**); (ii) the Prepetition Secured Party

shall have the right, prior to or in connection with final approval by the Court of the Shared Administrative Expenses and solely with respect to the fees and expenses under foregoing clause (i)(C), to seek to have those fees and expenses reallocated between the Debtors and any reimbursements thereof to be made at the time of the final approval thereof; and (iii) the rights of the Prepetition Secured Party with respect to any such request for reallocation and reimbursement are reserved in all respects.

9.      Procedures for Use of Cash Collateral.

a.      The Park Avenue Owner shall continue to deposit or to cause to be deposited all Cash Collateral now or hereafter in its possession or under its control to the Lockbox Account (as defined in the Loan Agreement).

b.      So long as the Termination Date has not occurred, the Prepetition Secured Party shall (i) permit the remittance of Cash Collateral from the Lockbox Account in accordance with the provisions of the Loan Agreement as if no Event of Default (as defined therein) (a **"Loan Agreement Event of Default"**) or Tenant Trigger Event had occurred and was continuing, that is, to be remitted on a daily basis to the Park Avenue Owner's operating account at Bank of America, N.A., which account is under the operational control of the Manager (as defined in the Loan Agreement), and, for the avoidance of doubt, the funds in that account are Cash Collateral; and (ii) remit Cash Collateral that is in the Prepetition Secured Party's possession or under its control in accordance with the provisions of the Loan Agreement for that distribution, including to remit Reserve Funds (as defined in the Loan Agreement) in accordance with the Loan Agreement, as if no Loan Agreement Event of Default or Tenant Trigger Event had occurred thereunder, all such funds so remitted to be used only in accordance with this Final Order and the Loan Documents.

c.    Upon the occurrence of the Termination Date, the Prepetition Secured Party may, at its option, cause Cash Collateral in the Lockbox Account to be held therein, but not, without further order of the Court, after notice and a hearing, disbursed therefrom.

10.    <u>Prepetition Secured Party's Adequate Protection</u>. As adequate protection for the Park Avenue Owner's use, sale, or lease of Cash Collateral and the Prepetition Collateral during the pendency of the Park Avenue Owner Case, the Park Avenue Owner is deemed to have—

a.    Granted the Prepetition Secured Party, solely to the extent of the postpetition diminution in value, if any, of the Prepetition Secured Party's interest in Cash Collateral and the Prepetition Collateral resulting from the use, sale, or lease by the Park Avenue Owner of Cash Collateral and the Prepetition Collateral, and the imposition or enforcement of the automatic stay pursuant to Bankruptcy Code Section 362(a) during the pendency of the Park Avenue Owner Case, subject and in all respects subordinate to the Carve Out—

(i)    Valid and perfected replacement security interests in and liens on (the **"Adequate Protection Liens"**) the Park Avenue Owner's assets and properties and other property of the Estate (whether existing on the Petition Date or arising or acquired thereafter), including the Prepetition Collateral and any proceeds thereof (collectively, the **"Replacement Collateral"**), in each case subject only to any valid, enforceable, and perfected senior liens on the Prepetition Collateral in existence as of the Petition Date or duly perfected after the Petition Date under Bankruptcy Code Section 546(b) (collectively, the **"Prior Senior Liens"**); and

(ii)    A superpriority administrative claim (the **"Adequate Protection Superpriority Claim"**) against the Estate, as and to the extent provided in Bankruptcy Code Section 507(b); and

b.      Agreed to pay or fund, and shall pay or fund, as the case may be, interest-only debt service at the non-default rate thereof required to be paid on, and the reserves required to be funded and the fees and ancillary expenses required to be paid under or in connection with, and in accordance with the loan documents for, the Mortgage Loan (that interest-only debt service at that rate and those reserves and other fees and ancillary expenses, including the amounts provided for in Paragraph 10.b(i) below, collectively, the **"Mortgage Loan Amounts"**; those loan documents, including the *Loan Agreement* dated May 5, 2017, made by the Park Avenue Owner with respect to the Mortgage Loan, collectively, the **"Loan Documents"**; and that loan agreement, the **"Loan Agreement"**), all as if the Cases had not been commenced; provided, however, that—

(i)      With respect to the reserve that was to be funded pursuant to Section 7.5.1 of the Loan Agreement on account of the Tenant Trigger Event (as defined in the Loan Agreement) that occurred with respect to the MLB Lease (as defined in the Loan Agreement), the Park Avenue Owner shall instead pay to the Prepetition Secured Party the amount of $1,500,000 on or before the last Business Day of each calendar month during each Budget Period commencing not later than December 31, 2021, until an aggregate amount of $19,080,545 with respect to the space demised under the MLB Lease has been so paid, those amounts to be held by or for the benefit of the Prepetition Secured Party in the same manner, but in a separate Account (as defined in the Loan Agreement), denominated the "Outstanding Rollover (MLB) Account", in the same manner as the Outstanding Rollover/Free Rent Account (as defined in the Loan Agreement) is held, and disbursed on account of Approved Leasing Expenses (as defined in the Loan Agreement) with respect to any replacement or replacements of the MLB Lease in accordance with the Loan Agreement, all as if the Cases had not been commenced;

(ii)    For the avoidance of doubt, the phrase "as if the Cases had not been commenced" (A) is not used to exclude, nor does it exclude, from the forgoing payment obligations of the Park Avenue Owner payment of any of those other fees and ancillary expenses, such as special servicing fees and interest on advances under Section 9.5 of the Loan Agreement, or costs and expenses under Section 10.13 of the Loan Agreement, required to be paid by the Park Avenue Owner under the Loan Documents that have arisen and become payable, or will arise and become payable, on account of the commencement of any Case, but only to permit the use of Cash Collateral pursuant hereto without the impact of any Cash Sweep Event (as defined in the Loan Agreement) that has occurred or would occur on account of the Tenant Trigger Event or the commencement of the Cases; and (B) does not constitute a waiver or release by the Prepetition Secured Party of or with respect to any amounts due under the Loan Documents or applicable law and not paid pursuant this Final Order; and

(iii)    Notwithstanding whether the Challenge Period (defined below) has expired and the Stipulations (defined below) have become binding pursuant to Paragraph 13 (Effect of Stipulations on Third Parties) below, any payments of interest-only debt service, at the non-default rate thereof, by the Park Avenue Owner to the Prepetition Secured Party pursuant to Paragraph 10.b above shall be distributed by the Prepetition Secured Party to any holder of any certificate representing an interest in the Mortgage Loan or any other Lender (as defined in the Loan Agreement) or successor thereto in accordance with the agreements and other documents governing the same, including (A) any trust and servicing agreement with respect to the certificates with respect to which the Prepetition Secured Party is trustee; and (B) any co-lender agreement with respect to the other Lenders and their successors; provided, however, that the rights of all parties in interest with respect to the characterization of any such any payments of debt service at

– 23 –

such rate are reserved until any timely challenge to the Stipulations made in accordance with this Final Order is adjudicated by the Court pursuant to a Final Court Order (including, for the avoidance of doubt, the right to seek authorization of the Court to recharacterize any such payments of debt service at such rate as a payment on account of principal to any holder of any certificate representing an interest in the Mortgage Loan or any other Lender or successor thereto), or, if no such timely challenge is so made, the Challenge Period has expired.

11.    <u>Prepetition Secured Party's Additional Adequate Protection</u>. As additional adequate protection of the Prepetition Secured Party's interests—

a.    The Park Avenue Owner shall use commercially reasonable efforts, consistent with its obligations as a debtor and debtor in possession under Bankruptcy Code Sections 1107 and 1108, to maintain the going concern value of the Prepetition Collateral by using Cash Collateral as provided by and only in accordance with this Final Order;

b.    The Park Avenue Owner shall provide the Special Servicer, on behalf of the Prepetition Secured Party, with, except as otherwise agreed by the Park Avenue Owner and the Prepetition Secured Party or ordered by the Court after notice and a hearing, continued financial reporting and permit the Prepetition Secured Party, the Special Servicer, and their agents and representative access, on such notice as is provided for by the Loan Documents, to 245 Park Avenue and the other Replacement Collateral, including the Park Avenue Owner's books and records, consistent with the Loan Documents (for the avoidance of doubt, information that (i) relates to the receipt or disbursement of Cash Collateral or the assets and liabilities of the Park Avenue Owner or the Estate; or (ii) would otherwise be within the scope of an examination of the Park Avenue Owner pursuant to Bankruptcy Rule 2004, is deemed to be information with respect to the operation of 245 Park Avenue and the financial affairs of the Park Avenue Owner that, if

requested by the Prepetition Secured Party under Section 5.1.11(f) of the Loan Agreement, would be reasonably requested thereunder);

       c.      The Park Avenue Owner shall, as soon as is reasonably practicable after entry of this Final Order, and from time to time thereafter as reasonably requested by the Prepetition Secured Party, deliver to the Prepetition Secured Party evidence, as and in accordance with the Loan Documents, that the Replacement Collateral is insured as required by the Loan Documents;

       d.      At no time during any Budget Period during which the Park Avenue Owner is authorized to use Cash Collateral may the surcharge provisions of Bankruptcy Code Section 506(c) be imposed on or against the Prepetition Secured Party or any Cash Collateral or other Replacement Collateral for the benefit of any party in interest, including (i) the Debtors; (ii) any Committee; or (iii) any of their respective Professional Persons;

       e.      Neither the Prepetition Secured Party nor any of the Replacement Collateral may be subject to the doctrine of marshaling;

       f.      At no time during the Cases may the limitation permitted by Bankruptcy Code Section 552(b), based on the equities of the case, on the extension of the Prepetition Secured Party's security interests to cover proceeds, products, offspring, or profits of any Prepetition Collateral, or any rents thereof, acquired after the commencement of the Park Avenue Owner Case provided by such section be imposed on or against the Prepetition Secured Party or any Prepetition Collateral;

       g.      All rights of the Prepetition Secured Party to indemnification pursuant to the terms of the Loan Documents, to the extent that any such indemnification has not been indefeasibly paid in full in cash pursuant to this Final Order or otherwise, are preserved; and

12.    <u>Stipulations</u>. Without prejudice to the rights of any party in interest in the Park Avenue Owner Case, and subject to Paragraph 13 (Effect of Stipulations on Third Parties) below, the Park Avenue Owner admits, stipulates, and agrees as follows (collectively, the **"Stipulations"**):

a.    The Debt (as defined in the Loan Agreement) existing as of the Petition Date (the **"Prepetition Debt"**) and the other Obligations (as defined in the Loan Agreement) constitute the legal, valid, and binding indebtedness and other obligations of the Park Avenue Owner, enforceable in accordance with the terms of the Loan Documents, other than as limited by the Bankruptcy Code;

b.    The Prepetition Secured Party's liens and security interests under the Mortgage and the other Loan Documents (collectively, the **"Prepetition Liens"**) secure all of the Prepetition Debt and the other Obligations as provided in the Loan Documents, other than as limited by the Bankruptcy Code;

c.    Subject to the Carve Out and any other liens pursuant to this Final Order, the Prepetition Liens constitute liens against or security interests in that Prepetition Collateral that are (A) first in priority; (B) properly perfected, valid, and enforceable; (C) not subject to any claim, counterclaim, defense, setoff, recoupment, or deduction; and (D) otherwise unavoidable and not subject to avoidance, recharacterization, impairment, or subordination pursuant to the Bankruptcy Code, applicable nonbankruptcy law, or any agreement, subject only to any Permitted Encumbrances (as defined in the Loan Agreement);

d.    The aggregate value of the Prepetition Collateral is greater than the Prepetition Debt plus any Allowable 506(b) Amounts (defined below);

e.      No offsets, defenses, counterclaims, deductions, or rights of recoupment to, from, or against the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization, impairment, or subordination pursuant to the Bankruptcy Code, applicable nonbankruptcy law, or any agreement;

f.      The Prepetition Secured Party's claims with respect to the Prepetition Debt shall, for all purposes, constitute an allowed secured claim within the meaning of Bankruptcy Code Section 506(a)(1) in an amount not less than the aggregate amount of the Prepetition Debt; and

g.      The Park Avenue Owner shall be deemed, as of the entry of this Final Order, to have fully, finally, and forever released and discharged the Prepetition Secured Party and each of its, and each other Lender's, respective parents, subsidiaries, members, shareholders, affiliates, officers, directors, agents, attorneys, predecessors in interest, and successors and assigns, in each case, in their respective capacities as such (collectively, the **"Released Parties"**), from and of any and all past and present actions, causes of action, demands, suits, claims, liabilities, liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses, and other obligations of any kind or nature whatsoever, whether in law, equity or otherwise (including interest and other carrying costs; penalties; legal, accounting, and other professional fees and expenses; incidental, consequential, and punitive damages payable, and those arising under Bankruptcy Code Sections 541 through 550 and 553, whether known or unknown, fixed or contingent, liquidated or unliquidated, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now or heretofore existing, or which may hereafter accrue, whether held in a personal or representative capacity, that are based on any act, fact, event, omission, or other matter, cause, or thing in any way, directly or indirectly, arising out of, connected with, or relating to the Loan, the Loan

Documents, the financial relationships arising thereunder or related thereto, the First Interim

Order, the Second Interim Order, this Final Order, the transactions contemplated hereby and

thereby, or any other agreements, certificates, instruments, or other documents or statements

(whether written or oral) related to any of the foregoing; provided, however, that nothing in the

preceding sentence to the contrary withstanding, the releases set forth in that sentence shall not (i)

release any Released Party from claims or causes of action arising from an act or omission that

was taken in bad faith or that is determined to have constituted actual fraud, willful misconduct,

or gross negligence unless and until any timely challenge to the Stipulations made in accordance

with this Final Order is adjudicated by the Court pursuant to a Final Court Order or, if no such

timely challenge is so made, the Challenge Period has expired; and (ii) limit or modify, or be

deemed to limit of modify the right of any Debtor to seek to disgorge, recover, or seek any other

legal or equitable remedy with respect to any recipient of, or transferee of any recipient of, any

payments effectuated on or about November 1, 2021, on account of or related to any mezzanine

loans pursuant to which any of the Debtors are obligors, and all rights, claims, and interests of all

parties in interest are reserved with respect to those payments.

       13.    <u>Effect of Stipulations on Third Parties</u>.

       a.    Without prejudice to the rights of any party in interest in the Park Avenue

Owner Case, and subject to this Paragraph 13 (Effect of Stipulations on Third Parties), the Park

Avenue Owner has admitted, stipulated, and agreed to the Stipulations, and the Stipulations shall

be binding on the Park Avenue Owner, the Estate, and any successor to the Park Avenue Owner

or the Estate in all circumstances, and all other parties in interest in the Park Avenue Owner Case

and the other Cases, and their respective successors and assigns, including the other Debtors, their

respective estates, any successors to any of the Debtors or their respective estates, any Trustee,

any trustee appointed or elected in any other Case, any examiner appointed in the Park Avenue Owner Case pursuant to Bankruptcy Code Section 1104 (an **"Examiner"**), other examiner appointed in any other Case, any Committee, any committee appointed in any other Case, or any other fiduciary appointed as a legal representative of the Park Avenue Owner or any other Debtor or with respect to the property of the Estate or the estate in its Case of other Debtors, unless—

(i)        Any party in interest in the Park Avenue Owner Case (including any Trustee) with requisite standing has duly filed an adversary proceeding or contested matter with notice to the parties on the notice list attached hereto as **Annex B** (the **"Notice List"**) after having received such requisite standing, as required under the Bankruptcy Rules and the Local Bankruptcy Rules, challenging the Stipulations or the Court's findings of fact set forth in this Final Order, including in Paragraph C (245 Park Avenue Loan and Mortgage) above or otherwise asserting or prosecuting any avoidance, recharacterization, or subordination actions or any other claims, counterclaims, causes of action, objections, contests, or defenses (collectively, the **"Claims and Defenses"**) against the Prepetition Secured Party or its parents, subsidiaries, members, shareholders, affiliates, officers, directors, agents, attorneys, predecessors in interest, and successors and assigns, in each case, in their respective capacities as such, in connection with any matter related to the Obligations or the Prepetition Collateral by no later than the date that is the later of (A) 75 days after the entry of this Final Order (or, in the case of any Committee, filing a motion for standing and authorization to file an adversary proceeding or contested matter by the earlier of (I) 60 days after the appointment of the Committee; and (II) the deadline to object to the confirmation of any Park Avenue Owner's proposed plan); and (B) any such later date (1) agreed to in writing by the Prepetition Secured Party or its counsel, in the Prepetition Secured Party's

discretion (email shall suffice); or (2) ordered by the Court (that time period, the **"Challenge Period"**); and

(ii)    A Final Court Order is entered by the Court or another court of competent jurisdiction in favor of, in the case of an adversary proceeding, the plaintiff therein, or, in the case of a contested matter, the movant therein, sustaining any such Claims and Defenses in any such duly filed adversary proceeding or contested matter.

b.    If no such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of the Court (i) the Obligations shall constitute allowed claims not subject to any Claims and Defenses, for all purposes in the Cases and any subsequent Chapter 7 case to which the Park Avenue Owner Case is converted; (ii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, and of the priority specified in the Stipulations, not subject any Claims and Defenses; and (iii) the Obligations and the Prepetition Liens shall not be subject to any other or further challenge by any party in interest in any of the Cases, including those identified in Paragraph 13.a above, and any such party in interest shall be enjoined from seeking to exercise the rights of the Estate, including any successor thereto (including, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).

c.    If any such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Final Order, including the Stipulations, shall nonetheless remain binding and preclusive as provided in Paragraph 13.b above on any party in interest in any of the Cases, including those identified in Paragraph 13.a above, except to the extent that any Claims and Defenses asserted in such adversary

proceeding or contested matter as to any such stipulations and admissions were expressly and successfully sustained or upheld by a Final Court Order in such adversary proceeding or contested matter.

d.       Nothing in this Final Order vests or confers on any party in interest in any of the Cases, including those identified in Paragraph 13.a above, standing or authority to pursue any cause of action belonging to any of the Debtors or their respective estates.

e.       In the event that there is a timely adversary proceeding or contested matter brought pursuant to this Paragraph 13 (Effect of Stipulations on Third Parties), the Court shall retain jurisdiction to fashion an appropriate remedy.

f.       Notwithstanding the foregoing, the Park Avenue Owner, any other Debtor, any Committee, any Trustee, and any other party in interest (subject, however, to any terms of any applicable intercreditor agreement to the contrary) may investigate the Obligations and the Prepetition Collateral during the Challenge Period at an aggregate expense not to exceed $250,000 (unless such amount is increased by the Court after notice and a hearing), provided, however, that (i) the Park Avenue Owner shall not be authorized to use, nor shall any other person or entity (including any Committee) be authorized to use, any Cash Collateral to challenge the validity, enforceability, priority, or extent of the Obligations or the Prepetition Liens or otherwise asserting or prosecuting any Claims and Defenses against the Prepetition Secured Party; and (ii) any of the Debtors may use Cash Collateral, subject to the provisions of this Final Order regarding Shared Administrative Expenses and the Allowed Professional Fees of Debtor Professionals, to respond to any discovery request, participate in a deposition or other interview, or make a witness available for a deposition or interview, in connection with any potential challenge with respect to the

validity, enforceability, priority, or extent of the Obligations or the Prepetition Liens, or otherwise asserting or prosecuting any Claims and Defenses against the Prepetition Secured Party.

14.     <u>Binding Effect</u>.

a.     This Final Order constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

b.     Except as modified by this Final Order and subject to the other provisions hereof and the Bankruptcy Code, including Section 1129 thereof, the Loan Documents and the terms and conditions thereof shall remain in full force and effect. To the extent that there is any conflict (i) between (A) the Motion or the Loan Documents; and (B) this Final Order, this Final Order shall govern and control; and (ii) between (A) the Budget; and (B) the description of the Budget in this Final Order, the Budget shall govern and control; <u>provided</u>, <u>however</u>, that, for the avoidance of doubt, to the extent that the inclusion in the Budget of amounts the expenditure of which are not by this Final Order subject to the limitations of the Budget, including, without any duplication, the Park Avenue Owner Shared Administrative Expenses Share, the Mortgage Loan Amounts, the Statutory Case Fees, the Allowed Professional Fees, and the Post-Carve Out Trigger Notice Cap, the inclusion thereof in the Budget is for illustrative and planning purposes only and the Budget does not otherwise limit the expenditures for those items.

15.     <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code Section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, solely (i) to permit the Park Avenue Owner to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claim; (ii) to permit the Park Avenue Owner to perform such acts as the Special Servicer may request on behalf of the Prepetition Secured Party to assure the perfection and priority of the Adequate Protection Liens in accordance herewith; (iii) to permit

the Park Avenue Owner to make the payments authorized to be made in accordance with the terms of this Final Order or any other Final Court Order of the Court consistent with this Final Order; and (iv) solely if the Termination Date occurs, to permit the Prepetition Secured Party to exercise its rights under Paragraphs 9.c above and Paragraph 18 (Remedies on Termination) below.

16.    <u>Perfection of Adequate Protection Liens</u>. Without any further order of the Court or any other court, this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens granted herein without the necessity of filing or recording any mortgage, financing statement, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable nonbankruptcy law) the Adequate Protection Liens granted herein, or to entitle the Prepetition Secured Party to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Secured Party may file such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of the Adequate Protection Liens without seeking modification of the automatic stay under Bankruptcy Code Section 362, and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date. The Prepetition Secured Party may, in its discretion, file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Park Avenue Owner has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

17.    <u>Termination Date</u>. The Park Avenue Owner's right to use Cash Collateral pursuant to this Final Order shall terminate at 11:59 p.m. (prevailing Eastern Time), without further notice or court proceeding, on (the effective date of any such termination, as provided below, the

"**Termination Date**") (i) with respect to an Automatic Termination Event (defined below), the first Business Day after the Business Day on which that the Prepetition Secured Party delivers a written notice (a "**Default Notice**") (email shall suffice) to counsel to the Park Avenue Owner, the U.S. Trustee, and counsel to the Committee (if any), at the email addresses set forth for each of them, respectively, in the Notice List, notifying those parties of the occurrence of an Automatic Termination Event and specifying the basis of that purported Automatic Termination Event with reasonable particularity, unless as to any such Automatic Termination Event, that Automatic Termination Event is waived in writing by the Prepetition Secured Party (email shall suffice) or as otherwise determined by the Court not to exist or to continue to exist, after notice and a hearing as provided below; and (ii) with respect to a Curable Termination Event, on the Business Day that is five Business Days after the Business Day on which the Prepetition Secured Party so delivers a Default Notice to those parties notifying those parties of the occurrence of a Curable Termination Event and specifying the basis of that purported Curable Termination Event with reasonable particularity (any such five-Business-Day period, a "**Default Notice Period**") unless, as to any such Curable Termination Event, that Curable Termination Event is waived in writing by the Prepetition Secured Party (email shall suffice), cured by or on behalf of the Park Avenue Owner prior to the expiration of the Default Notice Period with respect thereto, or as otherwise determined by the Court not to exist or to continue to exist, after notice and a hearing, as provided below (the effective date of any such termination, including as provided below, the "**Termination Date**"); provided, however, that (i) prior to the Termination Date, including, during any Default Notice Period with respect to a Curable Termination Event, the Park Avenue Owner shall be entitled to continue to use Cash Collateral in accordance with the terms of this Final Order; (ii) the Park Avenue Owner may schedule a hearing on a motion, on an expedited basis, in the Court on not

fewer than two Business Days' notice to all parties in interest and subject to the Court's availability, to resolve any disputes regarding whether any Automatic Termination Event or Curable Termination Event exists or continues to exist and consider any other relief in connection with the delivery of the Default Notice or continued use of Cash Collateral; (iii) the Expedited Hearing Provisions will apply thereto; (iv) if that hearing was requested and noticed within any applicable Default Notice Period but, due to the Court's unavailability, that expedited hearing cannot be held prior to the expiration of that Default Notice Period, that Default Notice Period shall be extended by not more than five Business Day to accommodate the Court's schedule for that hearing.

      18.   <u>Remedies on Termination</u>.

      a.   On the Termination Date and without prejudice to the Prepetition Secured Party's rights to seek additional adequate protection of its interests in the Replacement Collateral, the Prepetition Secured Party and the Park Avenue Owner shall each be entitled to apply to the Court for all appropriate relief, upon such notice as may be appropriate under the circumstances; <u>provided</u>, <u>however</u>, that (i) the rights and obligations of the Park Avenue Owner and the rights of the Prepetition Secured Party with respect to all transactions that have occurred prior to the Termination Date shall remain unimpaired and unaffected; (ii) the Prepetition Secured Party and the Park Avenue Owner shall retain all of their respective rights and remedies under the Bankruptcy Code, including the right of the Park Avenue Owner to request the continued use of Cash Collateral (on a consensual or nonconsensual basis) and the right of the Prepetition Secured Party to oppose such Park Avenue Owner's further use of Cash Collateral and to move for relief from the automatic stay; and (iii) in connection with any attempt by the Park Avenue Owner to seek to use Cash Collateral (on a consensual or nonconsensual basis) after the Termination Date,

such use shall be prohibited or conditioned as is necessary to provide adequate protection of the Prepetition Secured Party's interests in the Prepetition Collateral and Prepetition Liens, including the value thereof as of the Petition Date and taking into account all usage of Cash Collateral and other Replacement Collateral since the Petition Date. Nothing in this Final Order to the contrary withstanding, if any Debtor seeks to use Cash Collateral without the consent of the Prepetition Secured Party after the Termination Date, the Prepetition Secured Party reserves the right to object to the same.

19.    <u>Reservation of Rights</u>.

a.    Except as otherwise expressly provided in and limited by this Final Order, (i) the Park Avenue Owner reserves all of its rights and nothing herein or in the Motion shall prejudice the Park Avenue Owner's ability, (A) to seek any further use of Cash Collateral (including on a non-consensual basis) on any terms and conditions; (B) to the extent that any cash payment made to the Prepetition Secured Party as adequate protection is not an Allowable 506(b) Amount, to seek to recharacterize and apply that payment toward principal owed under the Loan Documents; (C) to seek a surcharge pursuant to Bankruptcy Code Section 506(c);or (D) dispute any claim or lien on any grounds; and (ii) the rights of all other parties in interest including the Prepetition Secured Party with respect to any request to use Cash Collateral, the validity, extent, and priority of any claims, and any purported liens securing such claims are reserved in all respects.

b.    Except as otherwise expressly provided in and limited by this Final Order, no delay or failure of any party in interest in exercising any right, power, or privilege with respect to any matter that is the subject hereof, or any single or partial exercise thereof, or any abandonment or discontinuance of steps to enforce such a right, power, or privilege, shall be deemed to be a waiver of any right, power, or privilege. The rights and remedies of the Park

Avenue Owner and the Prepetition Secured Party under this Final Order are cumulative and not exclusive. Any waiver, permit, consent or approval of any kind by the Park Avenue Owner or the Prepetition Secured Party with respect to this Final Order or any breach or default hereunder, or any waiver of any provision or condition hereof, or further extension of time, or modification or amendment hereof, must be in writing and shall be effective only to the extent set forth in that writing. The Park Avenue Owner and the Prepetition Secured Party reserve all rights and remedies not otherwise inconsistent herewith, pursuant to the Loan Documents, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable nonbankruptcy law.

20.    <u>Miscellaneous</u>.

a.    <u>No Rule 2019 Statement Required</u>. The Prepetition Secured Party shall not be required to file in any of the Cases a verified statement pursuant to Bankruptcy Rule 2019.

b.    <u>No Third Party Rights</u>. Except as expressly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity security holder, or any direct, indirect, or incidental beneficiary.

c.    <u>Survival of Final Order</u>. The provisions of this Final Order, any actions taken pursuant hereto, and the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall survive the entry of any order that may be entered (i) confirming any plan in the Park Avenue Owner Case or the Park Avenue Guarantor Case; (ii) converting the Park Avenue Owner Case or the Park Avenue Guarantor Case to a case under Chapter 7 of the Bankruptcy Code; (iii) to the extent authorized by applicable law, dismissing the Park Avenue Owner Case or the Park Avenue Guarantor Case; (iv) withdrawing of the reference of the Park Avenue Owner Case or the Park Avenue Guarantor Case from the Court; or (v) providing for

abstention from handling or retaining of jurisdiction of the Park Avenue Owner Case or the Park Avenue Guarantor Case in the Court.

       d.     <u>Stay, Modification, Reversal, or Vacation of Final Order</u>. Notwithstanding any stay, modification, reversal, or vacation of this Final Order, any indebtedness, obligation, or liability incurred by the Park Avenue Owner pursuant to this Final Order arising prior to the later of (i) the effective date of that stay, modification, reversal, or vacation; and (ii) the Prepetition Secured Party's receipt of notice thereof, shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Secured Party will be entitled to all of the rights, remedies, privileges, protections, releases, waivers, and benefits, including any payments authorized herein, and all security interests, liens, and priorities granted herein, with respect to all indebtedness, obligations, and liabilities incurred or existing prior to that date, and with respect to the Park Avenue Owner's use of Cash Collateral prior to that date. Without limiting the generality of the foregoing, if the Court, or any other court, hereafter modifies any of the provisions of this Final Order, that modification will not affect the rights, remedies, privileges, protections, releases, waivers, benefits, payments, security interests, liens, or priorities of the Prepetition Secured Party granted, provided, or acknowledged pursuant to this Final Order with respect to the indebtedness, obligations, or liabilities existing or incurred prior to that modification or any use of Cash Collateral prior thereto.

       e.     <u>Retention of Jurisdiction</u>. The Court has and will retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement this Final Order according to its terms.

       f.     <u>Debtor Authorization to Effectuate Relief</u>. The Debtors (including, for the avoidance of doubt, Alan J. Carr, Vik Jindal, the Debtors' Chief Restructuring Officer, and the

Debtor Professionals) are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

g.    <u>Updated Notice List Addresses</u>. Any person listed on the Notice List may, by a notice to the other persons on that list (email being sufficient), update that person's notice address, including email address, and, upon the giving of that notice, the Notice List will be deemed to have been amended thereby as to the recipients of that notice for purposes of this Final Order.

21.    <u>Rules of Construction and Additional Definitions</u>. In this Final Order—

a.    (i) "Including" and the like are not limiting; (ii) "or" is not exclusive; (iii) "shall" is mandatory; (iv) "may not", "neither … may", and the like are prohibitive and not permissive; (v) each of the masculine, female, and neuter genders includes the other genders; (vi) the singular includes the plural and vice versa; (vii) any reference to a collective group is a reference to each member or element of such group individually and to every combination of the members or elements thereof; (viii) where a term is defined as a plural, such definition also defines the singular form of such term as any member or element thereof, and where a term is defined as a singular, such definition also defines the plural form of such term as a collective group thereof; and (ix) "hereof", "herein", and the like refer to this Final Order as a whole and not to any particular section, paragraph, or provision hereof;

b.    Any reference to a title, code, law, statute, ordinance, rule, regulation, order, or other governmental provision, or any part or section thereof, include the same as it may from time to time be amended;

c.    Any reference to any of the Loan Documents means the same as from time to time amended, supplemented, extended, or restated except as the context otherwise demands;

d.      When used but not defined herein, uncapitalized terms that are defined or used in the Bankruptcy Code have the meanings given those terms in that code or, if not defined therein, the meanings that those terms have when used therein, including adequate protection, administrative expense, affiliate, applicable nonbankruptcy law, automatic stay, cash collateral, claim, credit, debt, debtor, debtor in possession, dismiss, entity, equity security, examiner, financial accommodation, good faith, indenture, indenture trustee, intellectual property, liens, ordinary course, party in interest, person, plan, proceeds, professional, security, security interest, and trustee;

e.      The title and the headings of sections and paragraphs hereof are for reference only and do not affect the interpretation or meaning of any provision hereof;

f.      (i) "Acceptable" or "satisfactory" to the Prepetition Secured Party and the like mean acceptable or satisfactory to that person in its opinion, discretion, and judgment; and (ii) any reference to the opinion, discretion, or judgment of a person, including in the preceding clause, means in that person's sole and absolute opinion, discretion, and judgment unless the same is expressly qualified as being reasonable;

g.      The words "consent", "approval", and "notice" shall be deemed to be preceded by the word "written" unless the same is expressly qualified as being oral or telephonic;

h.      Unless otherwise specified, references to a "Paragraph" or an "Annex" mean to the applicable paragraph of, or annex attached to, this Final Order;

i.      With respect to any adequate protection, payment, or other protection, lien, security interest, right, or release granted, provided, otherwise afforded, or confirmed to the Prepetition Secured Party by this Final Order, the same inures to the benefit of and extends to the Prepetition Secured Party for itself and the ratable benefit of each other Lender and their respective

successors in accordance with the Loan Documents, the other agreements between the Lenders relating to the Mortgage Loan, and any securitization agreements with respect to any Note or Notes;

    j.  **"Allowable 506(b) Amounts"** means all interest, fees, costs, charges, and expenses due or coming due under or in connection with the Loan Documents, the Prepetition Debt, or the other Obligations (regardless of whether such interest, fees, costs, charges, or expenses are included in any Budget) to the extent allowable under Bankruptcy Code Section 506(b), including, to the extent allowed pursuant to this Final Order or another Final Court Order of the Court following entry of this Final Order or deemed allowed pursuant to Bankruptcy Code section 502(a), (i) all interest on the Prepetition Debt at the Default Rate (as defined in the Loan Agreement); and (ii) all other fees and ancillary expenses, such as special servicing fees and interest on advances under Section 9.5 of the Loan Agreement, and costs and expenses under Section 10.13 of the Loan Agreement;

    k.  **"Automatic Termination Event"** means the occurrence of any one or more of the following events, unless (i) waived or modified by the Prepetition Secured Party prior to the occurrence of the applicable event; or (ii) following the occurrence of the applicable event, waived by the Prepetition Secured Party prior to the expiration of one Business Day period set forth in Paragraph 17 (Termination Date) above, in each case by notice in writing (email shall suffice) to counsel to the Park Avenue Owner:

    (i)  The Park Avenue Owner, without the consent of the Prepetition Secured Party, obtains entry of an order authorizing the use of Cash Collateral other than pursuant to this Final Order;

(ii)    The Park Avenue Owner has not filed a plan in the Park Avenue Owner Case by October 31, 2022;

(iii)    The Park Avenue Owner has not obtained entry in the Park Avenue Owner Case of an order under Bankruptcy Code Section 1125(b) approving a disclosure statement in respect of that plan by November 30, 2022;

(iv)    The Park Avenue Owner has not confirmed a plan in the Park Avenue Owner Case by December 31, 2022;

(v)    The Park Avenue Owner's exclusive period to file and solicit acceptances of a plan is terminated or lifted under Bankruptcy Code Section 1121;

(vi)    The Court shall have entered an order avoiding, disallowing, or subordinating any Adequate Protection Lien or the Prepetition Liens unless (A) the Park Avenue Owner has sought a stay of such order within five Business Days after the date of issuance of that order and that order is stayed, reversed, or vacated within ten Business Days after the date of issuance thereof; or (B) the Prepetition Secured Party has consented to such order in writing;

(vii)    Subject to the Carve Out, the Park Avenue Owner, without the consent of the Prepetition Secured Party, obtains entry of an order authorizing it to obtain credit or incur debt secured by a lien with priority that is *pari passu* with or senior to that of the Adequate Protection Lien or the Prepetition Liens, or that is given super-priority administrative expense status under Bankruptcy Code Sections 364(c) or 507(b) that is *pari passu* with or senior to that of Adequate Protection Superpriority Claim;

(viii)    Subject to the Carve Out, a lien (other than a Permitted Encumbrance) is granted on any Replacement Collateral with a priority that is *pari passu* with or senior to that of the Adequate Protection Lien or the Prepetition Liens;

(ix)    Subject to the Carve Out, an administrative expense is allowed or provided for in the Park Avenue Owner Case with a priority that is *pari passu* with or senior to that of the Adequate Protection Superpriority Claim;

(x)    The Park Avenue Owner consummates a sale pursuant to Bankruptcy Code Section 363 of all or substantially all of the Replacement Collateral unless the Debt is irrevocably and non-avoidably paid in full in immediately available funds from the Proceeds of that sale;

(xi)    A Trustee is appointed or elected, or an Examiner with the power to operate the Park Avenue Owner's business is appointed, in the Park Avenue Owner Case;

(xii)    Either the Park Avenue Owner Case or the Park Avenue Guarantor Case is converted to a case under Chapter 7 of the Bankruptcy Code or is dismissed;

(xiii)    This Final Order is reversed, vacated, stayed, amended, or supplemented without consent of Prepetition Secured Party, other than pursuant to the Final Order;

(xiv)    Either the Park Avenue Owner or the Park Avenue Guarantor is substantively consolidated with any other Debtor or any other person; or

(xv)    Any adversary proceeding, motion, or other proceeding is commenced or made by the Park Avenue Owner seeking to challenge the validity, nature, extent, or priority of, or to subordinate, the Prepetition Debt or the Prepetition Lien after the time within which the Park Avenue Owner is permitted to do so under Paragraph 13 (Effect of Stipulations on Third Parties) above has expired, unless the same is waived by the Prepetition Secured Party;

l.    **"Business Day"** means any day that is not (i) a Legal Holiday (as defined in Bankruptcy Rule 9006(a)(6); or (ii) a day on which the clerk's office is inaccessible within the

meaning of Bankruptcy Rule 9006(a)(3); and all time under this Final Order shall be computed as provided in Bankruptcy Rule 9006(a).

m.        **"Curable Termination Event"** means the occurrence of any one or more of the following events, unless (i) waived or modified by the Prepetition Secured Party prior to the occurrence of the applicable event; or (ii) following the occurrence of the applicable event, waived by the Prepetition Secured Party or cured by or on behalf of the Park Avenue Owner prior to the expiration of one Business Day period set forth in Paragraph 17 (Termination Date) above, in each case as to waiver or modification by the Prepetition Secured Party, by notice in writing (email shall suffice) to counsel to the Park Avenue Owner:

(i)        The Park Avenue Owner fails to perform any of its material obligations in accordance with the terms of this Final Order, which material obligations include (A) the failure to make any payment to the Prepetition Secured Party that is required to be made pursuant to this Final Order; and (B) the expenditure or disbursement of Cash Collateral other than as permitted by this Final Order;

(ii)        Prior to January 1, 2022, the Park Avenue Owner fails to give prior written notice to the Prepetition Secured Party, through the Special Servicer, and the Prepetition Secured Party's counsel, at the email addresses set forth for the Special Servicer and that counsel, respectively, in the Notice List, of the intention of the Park Avenue Owner to take or not to take any action with respect to the Loan Agreement or the other Loan Documents that would cause a material Loan Agreement Event of Default or other material default under or breach of the Loan Agreement or any other Loan Document (other than with respect to a Loan Agreement Event of Default that existed on the Petition Date and any continuation thereof thereafter during the Park Avenue Owner Case); provided, however, that the Prepetition Secured Party reserves all rights it

– 44 –

has under the Loan Documents with respect to any such intended action or inaction, including to seek appropriate relief from the Court, including on an expedited basis (as to which the Expedited Hearing Provisions shall apply);

(iii)     On or after January 1, 2022, a material Loan Agreement Event of Default or other material default under or breach of the Loan Agreement or any other Loan Document occurs (other than with respect to a Loan Agreement Event of Default that existed on the Petition Date and any continuation thereof thereafter during the Park Avenue Owner Case);

(iv)     Relief from the automatic stay is granted to any party to permit the exercise of remedies with respect to any of the Replacement Collateral that is material property in the opinion of the Prepetition Secured Party; or

(v)     Any representation or warranty made by the Park Avenue Owner or the Park Avenue Guarantor in any material certificate, report, or financial statement delivered to the Prepetition Secured Party after the Petition Date proves to have been intentionally false or intentionally misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty, or statement not misleading); and

n.     **"Final Court Order"** means an order of the Court (i) as to which (A) the time to appeal, petition for certiorari or other similar proceedings, or move for reargument or rehearing has expired; and (B) no notice of appeal, appeal, petition for certiorari or other similar proceedings, writ of certiorari or similar writ, motion for reargument or rehearing, or order for reargument or rehearing is then pending; or (ii) if a notice of appeal, appeal, petition for certiorari or other proceedings, writ of certiorari or similar writ, motion for reargument or rehearing, or order for reargument or rehearing with respect to such order of the Court has been filed or sought,

(A) that order has been affirmed by the highest court to which that order was appealed, certiorari or similar writ has been denied, or reargument or rehearing has been denied or resulted in no modification of that order; and (B) the time to appeal, petition for certiorari or other similar proceedings, or move for reargument or rehearing with respect thereto has expired.

**Annex A**

**Budget**

**PWM Property Management - 245 Park Avenue**

| ($ in Thousands) | Forecast Week: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week Ending: | 11/26 | 12/3 | 12/10 | 12/17 | 12/24 | 12/31 | 1/7 | 1/14 | 1/21 | 1/28 | 2/4 | 2/11 | 2/18 | 2/25 | | |
| **Receipts** | | | | | | | | | | | | | | | | | |
| Base & Other | | – | – | $5,535 | $4,499 | – | – | $4,034 | $2,680 | $5,281 | $282 | $4,305 | $2,680 | $5,281 | $282 | | $34,859 |
| Real Estate Tax Reimbursement | | – | – | – | – | – | – | 2,258 | – | – | – | – | 9,400 | – | – | | 11,658 |
| **Operating Receipts** | | **–** | **–** | **$5,535** | **$4,499** | **–** | **–** | **$6,292** | **$2,680** | **$5,281** | **$282** | **$4,305** | **$12,080** | **$5,281** | **$282** | | **$46,517** |
| Release of Reserves for CapEx / TI / Commissions | | – | 2,180 | 6,696 | 2,013 | 1,125 | 1,125 | 642 | – | – | – | 795 | – | – | – | | 14,576 |
| Receipts | | **–** | **$2,180** | **$12,231** | **$6,512** | **$1,125** | **$1,125** | **$6,934** | **$2,680** | **$5,281** | **$282** | **$5,100** | **$12,080** | **$5,281** | **$282** | | **$61,094** |
| **Disbursements** | | | | | | | | | | | | | | | | | |
| Operating Expenses | | (1,350) | (891) | (1,157) | (677) | (896) | (611) | (943) | (61) | (722) | (236) | (342) | (661) | (812) | (236) | | (9,597) |
| Real Estate Tax Escrow | | – | (3,524) | – | – | – | – | (3,524) | – | – | – | (3,524) | – | – | – | | (10,573) |
| Insurance Premium Escrow | | – | (260) | – | – | – | – | (260) | – | – | – | (260) | – | – | – | | (780) |
| CapEx / TI / Commissions | | – | (2,180) | (4,196) | (2,013) | (1,125) | (1,125) | (642) | – | – | – | (795) | – | – | – | | (12,076) |
| Management Fee | | – | – | – | – | – | (250) | – | – | – | – | – | – | – | – | | (250) |
| **Total Operating Disbursements** | | **($1,350)** | **($6,854)** | **($5,354)** | **($2,690)** | **($2,021)** | **($1,986)** | **($5,369)** | **($61)** | **($722)** | **($236)** | **($4,921)** | **($661)** | **($812)** | **($236)** | | **($33,276)** |
| **Net Operating Cash Flow** | | **($1,350)** | **($4,675)** | **$6,877** | **$3,822** | **($896)** | **($861)** | **$1,565** | **$2,619** | **$4,559** | **$46** | **$179** | **$11,419** | **$4,469** | **$46** | | **$27,818** |
| **Non-Operating Cash Flow** | | | | | | | | | | | | | | | | | |
| Mortgage Loan Interest | | – | – | (3,669) | – | – | – | (3,792) | – | – | – | (3,792) | – | – | – | | (11,253) |
| Professional Fees | | – | (133) | – | – | (2,304) | (133) | – | – | – | (2,996) | – | – | – | | (5,567) |
| Special Servicer Related Fees | | – | – | (704) | – | – | (738) | – | – | – | (723) | – | – | – | | (2,164) |
| Adequate Assurance Utility Deposit | | – | (215) | – | – | – | – | – | – | – | – | – | – | – | – | | (215) |
| D&O Insurance Premium | | – | (188) | – | – | – | – | – | – | – | – | – | – | – | – | | (188) |
| US Trustee Fee | | – | – | – | – | – | – | – | – | – | (140) | – | – | – | – | | (140) |
| MLB Escrow for Future Tenants | | – | – | – | – | – | (1,500) | – | – | – | (1,500) | – | – | – | (1,500) | | (4,500) |
| **Non-Operating Cash Flow** | | **–** | **($403)** | **($4,506)** | **–** | **–** | **($3,804)** | **($4,663)** | **–** | **–** | **($1,640)** | **($7,511)** | **–** | **–** | **($1,500)** | | **($24,027)** |
| **Net Cash Flow** | | **($1,350)** | **($5,078)** | **$2,371** | **$3,822** | **($896)** | **($4,666)** | **($3,098)** | **$2,619** | **$4,559** | **($1,594)** | **($7,332)** | **$11,419** | **$4,469** | **($1,454)** | | **$3,791** |
| Beginning Cash Balance | | $14,649 | $13,299 | $8,221 | $10,592 | $14,414 | $13,518 | $8,852 | $5,754 | $8,373 | $12,932 | $11,338 | $4,006 | $15,425 | $19,894 | | $14,649 |
| Change In Cash | | (1,350) | (5,078) | 2,371 | 3,822 | (896) | (4,666) | (3,098) | 2,619 | 4,559 | (1,594) | (7,332) | 11,419 | 4,469 | (1,454) | | 3,791 |
| Ending Cash Balance | | $13,299 | $8,221 | $10,592 | $14,414 | $13,518 | $8,852 | $5,754 | $8,373 | $12,932 | $11,338 | $4,006 | $15,425 | $19,894 | $18,440 | | $18,440 |

## Annex B

## Notice List

Counsel to Prepetition Secured Party, Jeffer Mangels Butler & Mitchell, LLP, Two Embarcadero Center, Fifth Floor, California, California 94111-3813 (Attn: Robert B. Kaplan, Esq., email: rbk@jmbm.com, and Nicolas De Lancie, Esq., email: nde@jmbm.com).

Co-Counsel to Prepetition Secured Party, McCarter & English LLP, 405 North King Street, 8th Floor, Wilmington, Delaware 19801 (Attn: William F. Taylor, Esq., email: WTaylor@mccarter.com).

Special Servicer, Situs Holdings, LLC, Two Embarcadero Center, Eighth Floor, San Francisco, California 94111-3813 (Attn: Robert E. Records, email: RobertRecords@situsamc.com).

Counsel to the Debtors, White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, Illinois 60606 (Attn: Bojan Guzina, Esq., email: Bojan.Guzina@whitecase.com, and Gregory Pesce, Esq., email: Gregory.Pesce@whitecase.com); and White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131-2346 (Attn: Thomas F. Lauria, Esq., email: TLauria@whitecase.com, and Fan B. He, Esq., email: FHe@whitecase.com).

Co-Counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edmon L. Morton, Esq., email: EMorton@ycst.com, and Kenneth J. Enos, Esq., email: KEnos@ycst.com).

M3, M3 Advisory Partners, LP, 1700 Broadway, 19th Floor, New York, New York 10019 (Attn: Mohsin Y. Meghji, email: MMeghji@m3-partners.com, Lyle Bauck, email: LBauck@m3-partners.com, and William Gallagher, email: WGallagher@m3-partners.com).

Counsel to S.L. Green Management Corp., Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York City, New York 10019-6099 (Attn: Rachel C. Strickland, Esq., email: RStrickland@willkie.com, and Debra McElligott Sinclair, Esq., email: DSinclair@willkie.com).

Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Linda Casey, email: Linda.Casey@usdoj.gov).

Counsel to the Committee, if any, appointed in the Cases.