IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|   |   |   |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| PWM Property Management LLC, *et al.*,[1] | ) ) ) | Case No. 21-11445 (MFW) |
| Debtors. | ) ) ) ) | (Jointly Administered) |

**DECLARATION OF REID SNELLENBARGER
IN SUPPORT OF DEBTORS' MOTION FOR
ENTRY OF SUPPLEMENTAL BIDDING PROCEDURES
ORDER AND AN ORDER (I) AUTHORIZING AND APPROVING
ENTRY INTO THE STALKING HORSE AGREEMENT, (II) APPROVING
RELATED BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF**

I, Reid Snellenbarger, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a shareholder and a Managing Director at Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**") and a senior member of Houlihan Lokey's Financial Restructuring Group. On February 17, 2022, this Court authorized the debtors and debtors in possession (collectively, the "**Debtors**"), to retain Houlihan Lokey as their investment banker in the above captioned chapter 11 cases. *See* Docket No. 454. I submit this declaration in support of the *Debtors' Motion for Entry of Supplemental Bidding Procedures Order and an Order (I) Authorizing and Approving Entry into the Stalking Horse Agreement, (II) Approving Related Bid Protections, and (III) Granting Related Relief* (the "**Stalking Horse Motion**").[2]

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: PWM Property Management LLC (2514); 245 Park Avenue Property LLC (9531); HNA 245 Park Ave JV LLC (5043); 245 Park JV LLC (2417); 245 Park Avenue Mezz C LLC (5276); 245 Park Avenue Mezz B LLC (4961); 245 Park Avenue Mezz A LLC (4673); 181 West Madison Holding LLC (2346); and 181 West Madison Property LLC (3759). The debtors' service address for purposes of these cases is 245 Park Avenue, Floor 40, New York, New York 10167.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Stalking Horse Motion.

2. I previously submitted a declaration in support of the Debtors' Bidding Procedures Motion. *See Declaration of Reid Snellenbarger in Support of Debtors' Motion for Entry of an Order (I) Establishing Bidding and Auction Procedures Relating to the Submission of Transaction Proposals and (II) Granting Related Relief* [Docket No. 669] (the "**Prior Declaration**"). On June 30, 2022, the Court entered the Bidding Procedures Order. *See* Docket No. 744. I hereby incorporate by reference my Prior Declaration as if it were set forth in full herein. I submit this declaration to provide the Court, the U.S. Trustee, and other interested parties with additional information relating to the Stalking Horse Agreement and the related Bid Protections.

### Stalking Horse Agreement

3. Following the filing of the Bidding Procedures on June 9, 2022, the Debtors sought to maximize stakeholder value by continuing to solicit potential proposals for 181 West Madison and 245 Park Avenue. As part of that process, the Debtors accelerated their discussions with S.L. Green regarding a potential stalking horse bid for 245 Park Avenue. Those productive discussions have now resulted in a definitive agreement for 245 Park Member LLC (the "**Stalking Horse Bidder**" or "**S.L. Green**") to sponsor a competitive plan of reorganization for the Debtors with respect to 245 Park Avenue.

4. After multiple rounds of negotiations, on June 20, 2022, S.L. Green proposed a bid pursuant to which S.L. Green will exchange at least $40 million of its preferred equity interests in 245 Park JV LLC for 100% of the common membership interests in 245 Park JV LLC, which indirectly holds 100% of the equity interests in the entity that owns 245 Park Avenue. In addition, S.L. Green will contribute cash of approximately $68 million at closing to satisfy the obligations necessary to effectuate the restructuring. The Stalking Horse Bid, if consummated, would provide a host of benefits to the estates, including that it would:

(a) discharge 100% of the Debtors' preferred equity obligation,[3] (b) provide for the payment in full in cash of administrative, priority, and general unsecured claims, in accordance with the terms of the Stalking Horse Agreement and Plan, (c) reinstate 245 Park Avenue's mezzanine indebtedness on a consensual basis, as agreed to by S.L. Green and a super-majority of the mezzanine lenders, without the need to pay over $20 million in asserted default interest claims, and (d) replace 181 West Madison Holding LLC with S.L. Green Realty Corp. as guarantor of 245 Park Avenue's funded indebtedness on a prospective basis effective from and after the Effective Date.  Finally, the Stalking Horse Bid is expressly subject to higher or better offers in accordance with the terms of the Bidding Procedures and the Stalking Horse Agreement, and, therefore, will serve as a baseline bid for any subsequent transaction involving 245 Park Avenue, whether structured as an asset sale or plan sponsorship transaction.

5. Houlihan Lokey and the Debtors evaluated the specific terms of S.L. Green's proposal with the goal of maximizing recovery for all stakeholders, and among other things, the Debtors analyzed:  (a) the amount of consideration provided; (b) the structure of the proposed plan transactions; (c) the requested bid protections and any possible impact on the upcoming auction; and (d) risks relating to the bid.  After extensive negotiations and diligence, the Debtors, in consultation with their advisors, determined that the enhanced stalking horse proposal made by S.L. Green was in the best interests of the Debtors.  Accordingly, on July 8, 2022, the Debtors and S.L. Green entered into that certain Plan Sponsorship and Investment Agreement (the "**Stalking Horse Agreement**").

---

[3] As set forth in the Plan, all Claims assertable by S.L. Green or its affiliates against any non-Debtor, including, but not limited to, with respect to the redemption of the Park Avenue Preferred Equity Guarantee, remain outstanding on and after the Effective Date and shall not be satisfied, compromised, settled, released, or discharged in full or in part pursuant to Article III.B of the Plan and all rights of S.L. Green and its affiliates with respect thereto are expressly reserved.

6. I believe that entry into the Stalking Horse Agreement will ensure that S.L. Green is committed to the bid reflected in the Stalking Horse Agreement and will establish a floor for other interested bidders to submit, and for the Debtors to pursue a superior offer in accordance with the terms of the Stalking Horse Agreement. I believe the Stalking Horse Agreement was the result of arms-length, good-faith negotiations between the Plan Sponsor Debtors and the Stalking Horse Bidder, and the Stalking Horse Bid is the best and the highest offer the Plan Sponsor Debtors have received to date. The Debtors will continue the Court-supervised marketing process pursuant to the Bidding Procedures, including conducting an auction on July 26, 2022 if a qualified bid other than the Stalking Horse Bid is received by the Bid Deadline of July 21, 2022. I believe this process will allow the Debtors to maximize value while remaining on track to emerge by mid-September.

### Reasonableness of the Bid Protections

7. Subject to the terms and conditions of the Stalking Horse Agreement, upon the consummation of an Alternative Transaction (as defined in the Stalking Horse Agreement), the Plan Sponsor Debtors shall pay the Stalking Horse Bidder a break-up fee of $5,000,000 paid solely from the proceeds of an Alternative Transaction (the "**Termination Fee**") and an expense reimbursement of up to $2,000,000 (the "**Expense Reimbursement**" and together with the Termination Fee, the "**Bid Protections**"). In light of the numerous benefits provided by the Stalking Horse Bid, I believe the Bid Protections are necessary to lock in the Stalking Horse Bid and are reasonable under the circumstances. Indeed, the aggregate amount of the Termination Fee and Expense Reimbursement represents less than 0.4% of the transaction value.[4]

---

[4] The transaction value is the sum of $1.2 billion of mortgage debt, $568 million of mezzanine debt, $40 million of equitized preferred equity and $68 million of contributed cash.

8. The Debtors, with the assistance of Houlihan Lokey, have engaged with S.L. Green for months regarding its interest in submitting a potential stalking horse bid. Throughout those discussions, S.L. Green indicated to the Debtors and Houlihan Lokey that a market break-up fee and expense reimbursement were an integral part of a deal and inducement for S.L. Green to submit a stalking horse bid to sponsor a plan of reorganization for the Debtors with respect to 245 Park Avenue. The Debtors initially refused to provide the requested bid protections to S.L. Green. Ultimately, the Debtors determined that it was prudent to select a stalking horse prior to the auction to ensure that there was a committed "floor" at the auction. As a result, the Debtors accelerated their discussions with S.L. Green regarding its interest in a potential transaction. During those discussions, the Debtors determined that S.L. Green would not sign a stalking horse agreement to sponsor a plan proposed by the Debtors unless it received certain bid protections (a break-up fee and expense reimbursement).

9. I believe the proposed Bid Protections are reasonable under the circumstances. Among other things, the Stalking Horse Bid will establish a floor for further bidding that may result in an enhanced proposal, which will inure to the benefit of the Plan Sponsor Debtors' estates. By inducing the Stalking Horse Bidder to hold its proposal open as a baseline from which other potential bidders can submit higher or better offers, the Bid Protections will serve to encourage more competitive bidding, which will hopefully increase the consideration provided under the Plan. Moreover, I believe the aggregate amount of the proposed Bid Protections (not more than ***$7 million***) will not chill bidding given the size of this transaction, which will restructure more than ***$1.7 billion***, in funded indebtedness. In short, I believe the proposed Bid Protections are a sound exercise of the Plan Sponsor Debtors' business judgment and are in the best interest of the Plan Sponsor Debtors, their estates, and all stakeholders.

10. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 8, 2022

                                                  */s/ Reid Snellenbarger*
                                                  Reid Snellenbarger
                                                  Managing Director
                                                  Houlihan Lokey Capital, Inc.